McBRIDE, Judge.
Plaintiff, a colored man 45 years of age, filed this suit against his former employer and his workmen’s compensation liability insurer for workmen’s compensation at the rate of $30 per week for a period not to exceed 400 weeks, his claim being that he was rendered totally and permanently disabled from performing work of any reasonable character by reason of an accident which befell him on May 25, 1956, during the scope and course of his employment. Plaintiff recovered judgment after a trial on the merits below for compensation as prayed for (subject to certain credits for compensation previously paid by defendants), and.the defendants have taken this appeal therefrom.
The defendants in a joint answer to the suit admitted that plaintiff met with an accident on the above date, and alleged that upon his reporting an injury to his employer, he was sent to the employer’s physician who treated him until July 30, 1956, when the physician discharged him as being able to return to his job. The defendants specifically deny that plaintiff is totally and permanently disabled as he claims to be.
The accident and the resultant injury occurred while plaintiff was handling an automobile tire.. Plaintiff testified that he bounced the tire, which fell to the ground, and that upon stooping to lift it, he felt a knife-like pain in his back. Plaintiff testified that as a result of the accident he cannot perform any sort of hard work because of the inability to stoop and the pain in his middle back which runs down the left leg.
Plaintiff was sent to the office of Drs. Plouston, Roy & Faust on the date the injury occurred and was there seen by Dr. Richard A. Faust who specializes in surgery. While this physician made no X-rays of the *914 plaintiff’s back he concluded that plaintiff had sustained a strain of the ligaments and' muscles of the back, and prescribed that the patient sleep on a hard bed with a board under his mattress, that he utilize external heat applications at home, that he take sedatives, and that he return to the doctor’s office on subsequent days for diathermy treatment. From Dr. Faust’s testimony it appears he saw plaintiff several times a week thereafter and that on June IS, 1956, his opinion was that plaintiff had progressed so well he could return to his job. According to a stipulation in the record, plaintiff did make an attempt to return to his employment, but because of pain he was unable to do the work and left the job on June 18, 1956. The stipulation between counsel also discloses the fact that plaintiff was paid full compensation by the defendants from the date of his accident through July 31, 1956.
After plaintiff found it necessary because of his condition to quit the job on June 18, 1956, he returned to Dr. Faust’s office, and one of this physician’s associates referred him to Dr. H. R. Soboloff, an orthopedic specialist, for examination.
Dr. Soboloff on June 20, 1956, after having X-rays taken, made an orthopedic examination, his findings being that plaintiff had congenital malformations of his entire lumbar spine, and he pointed out an offset between vertebrae L-4 and L-5 which in his opinion indicated a spondylolisthesis. Dr. Soboloff also noted a narrowing of L-5 and S-l which he said “was on a congenital basis.”
However, Dr. Soboloff felt that plaintiff had symptoms in his back consistent with his complaints “within a reasonable degree,” and that he felt plaintiff should continue to have treatment. He explained that because of the congenital malformations it would take a longer period for plaintiff to recover than in the case of a normal person, and so the patient was referred back to Dr. Faust for further treatment.
Dr. Faust testified that he did not agree with Dr. Soboloff, but that nevertheless he continued treating plaintiff up until July 30, 1956, when he discharged him as completely cured. Dr. Faust states that his discharge of plaintiff on July 30, 1956, was based not only on his own opinion that plaintiff had recovered but also on the opinion Dr. Soboloff reached after a second examination of the plaintiff made on July 27, 1956.
Plaintiff claimed to have pain when he went to Dr. Soboloff for the July 27, 1956, or second examination. However, Dr. Soboloff’s conclusion was that there was a lack of any orthopedic findings and the examination was negative, and he believed that the plaintiff was fully able to return to the same job in which he had been previously employed. Dr. Soboloff stressed there was no evidence of an injury by trauma and brought out that the accident did not in any way aggravate the congenital condition already mentioned.
In order to maintain the chronology of the medical examinations which plaintiff was subjected to, it should be stated here that between the first and second examinations by Dr. Soboloff, plaintiff’s counsel sent him to Dr. Homer D. Kirgis, neurosurgeon, who saw and examined plaintiff the one time, July 12, 1956, the examination being made with the aid of X-rays. According to Dr. Kirgis, there was a narrowing of the fourth lumbar interspace and possibly a minor anterior subluxation of the fourth lumbar vertebra and the fifth lumbar vertebra. Dr. Kirgis thought that the plaintiff suffered from a rupture of the fourth and fifth lumbar intervertebral discs, which condition he described by saying that the spinal column is made up of a series of vertebrae, one on top of the other, between each pair of which is a cartilaginous inter-vertebral disc which acts like a cushion between the bodies of the vertebrae. The physician explained that with a sudden compression of the spine, such as occurs from a fall, or with a leverage-type twisting, or a lifting effort, the vertebrae arc *915 forced tog-ether and the intervertebral disc slips partially out -of place. In medical parlance this condition is known as a herniated or a ruptured intervertebral disc and is considered very plainful. Dr. Kirgis also stated he observed multiple congenital lesions of plaintiff’s lumbar spine.
Dr. Kirgis’ conclusion was after this one examination that plaintiff, because of the condition resulting from the herniated or ruptured intervertebral disc, could not possibly return to his former employment.
On August 13, 1956, the defendant insurance company had the plaintiff examined by Dr. R. H. Corales, Jr., a neurosurgeon. Dr. Corales made no reference to the spondylolisthesis or congenital condition spoken of by Dr. Soboloff or the herniated or ruptured disc mentioned by Dr. Kirgis, his findings being that there was an exaggeration of complaints by plaintiff and that it was difficult to say whether there is some underlying organic pathology with any great degree of accuracy, but that if any pathology existed he believed that plaintiff greatly magnified it.
The last physician to whom plaintiff was sent was Dr. Irvin Cahen, orthopedist, who saw him on December 19, 1956, and made an examination with the aid of X-ray pictures. It appears that this examination was made at the behest of defendants’ attorney.
Dr. Cahen states he found no condition which he could trace to trauma, and he considered the back condition as representing potential abnormalities which had been present for a long time, particularly referring to a degenerative condition of the fourth and fifth vertebrae, and his opinion was the type of injury plaintiff had sustained had produced no effects which could be considered as an aggravation of his back abnormality. He thought that the plaintiff was fully competent to return to the duties of his- employment.
As is seen from the narration of the testimony elicited from the five physicians, the question is whether plaintiff, if disabled, was rendered so as a result of a herniated or ruptured disc sustained in the accident as testified to by Dr. Kirgis or whether he is the victim of the congenital condition described by Drs. Soboloff and Cahen and also alluded to by Dr. Kirgis.
Several friends of plaintiff testified as to his not having worked since the date of the accident, but their testimony is valueless on the question of whether the incapacity was the result of an accident at the service station at which plaintiff was employed. These witnesses, although laymen, on direct examination were asked questions of such a nature as could only be answered by a medical expert. For instance, some were asked questions of this sort:
“Are you satisfied in your own mind, as a friend and acquaintance of Em-phrem, that the reason he is not working is because he is suffering from pain in the back?”
We feel justified in disregarding anything the lay witnesses had to say regarding plaintiff’s physical condition.
One thing stands out in this case above all else and that is that Dr. Kirgis, the neurosurgeon who appeared as plaintiff’s sole medical expert, saw plaintiff the one time only, July 12, 1956, which was more than seven months before the date of the trial. The defendants’ physicians all disagree with Dr. Kirgis that plaintiff sustained or is disabled by reason of a herniated or ruptured intervertebral disc, but even if it could be assumed that the testimony and opinion given by Dr. Kirgis are correct and that the plaintiff actually sustained such an injury, there is not one word of testimony from any medical expert to the effect that plaintiff’s alleged inability to work is the result of a herniated or ruptured disc or that at present there is any evidence of such condition. Plaintiff’s medical evidence pertains to his condition on July 12, 1956, more than seven months be *916 fore the trial and at a time he was under treatment by Dr. Faust and was receiving compensation, but we are not concerned with his then condition but rather with whether there was a disabling condition attributable to the trauma existing after plaintiff had been discharged by Dr. Faust on July 30, 1956.
The following quoted testimony of Dr. Kirgis has maximum pertinency in the case:
“Q. The plaintiff has already testified that he has never returned to work as he has been continuously disabled, and continues suffering with pain and has suffered since May, 1956? A. Of course, all I can testify to is a finding of July 12, 1956.
“Q. Then, Doctor, you are not in a position to testify as to this man’s disability as of today? A. No. As I indicated I can testify only relative to the disability and discomfort as of the date I mentioned.
“Q. And there might have been a lot of changes that have taken place subsequent to your examination of July, 1956? A. Yes. As I indicated, it is possible in any case of a ruptured intervertebral disc where over a relatively short period of time for the symptoms to lessen and even completely disappear.”
Dr. Soboloff, Dr. Corales and Dr. Cahen all saw the plaintiff after Dr. Kirgis made his examination, the latest examination having been made by Dr. Cahen on December 19, 1956, just about two months before the date of the hearing below. These physicians who made their examinations subsequent to the one made by Dr. Kirgis were sure that there was no evidence of any disability which might have resulted from trauma plaintiff might have sustained on May 25, 1956.
The trial judge undoubtedly believed the testimony of Dr. Kirgis and ignored the testimony given by the medical experts produced by defendants, but we believe the judge entirely overlooked the time element of Dr. Kirgis’ examination which, we repeat, was more than seven months before the trial, during which interim, as stated by Dr. Kirgis himself, plaintiff could have recovered from the injuries. Moreover, Dr. Kirgis’ diagnosis as of July 12, 1956, strikes us as being a tentative one of which the doctor himself seemed unsure, because we find in his report to plaintiff’s then attorney he stated:
“ * * * It is recommended that additional roentgenograms of the lumbar spine be made consisting of right and left oblique projections of the lumbar spine. It is recommended that an orthopedic consultant evaluate him. I shall be glad to see him again at any time.”
We think our esteemed brother below erred in evaluating the weight of the testimony.
 We do not believe that the plaintiff has proven his case by a preponderance of the evidence. It is too■ well-established to require the citation of authorities that the plaintiff in a compensation case, as is any other plaintiff in a civil case, is called upon to bear the burden of proof to establish his case by a reasonable preponderance of the evidence.
The Compensation Statute itself (LSA-R.S. 23 *.1317) provides in part as follows:
“ * * * The court shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence, * *
For the reasons assigned, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of the defendants and against the plaintiff dismissing the latter’s suit; the plaintiff is condemned to bear all court costs.
Reversed.