McCALEB, Justice.
 

 This is a suit for workmen’s compensation. Plaintiff, a 48 year old Negro common laborer, suffered an ankle injury on July 9, 1956 while working for defendant’s insured, Oscar Sylvester, Jr., when a jack which was being used to lift a house slipped and fell against his left ankle. Immediately after the accident, plaintiff was taken to the office of Dr. C. J. Aswell of Ville Platte, Louisiana where the injured ankle was examined, an Ace bandage applied thereon and plaintiff sent home for bed rest. On July 12th he was still complaining of pain, so the doctor instructed him to keep his weight off the ankle by using crutches. On July 17 and 27, 1956, X-rays of the left foot were taken. These pictures were sent to an orthopedist who informed Dr. Aswell (a general practitioner) that, if the pain still persisted, to place the injured ankle in a cast, which was done on July 28th. On August 31st the cast was removed and the ankle wrapped with an Ace bandage. Thereafter, plaintiff was treated intermittently by Dr. Aswell until October 19, 1956. In the meantime, on October 10th, a third X-ray of his ankle was taken, which disclosed a hairline fracture without any displacement in the lower part of the fibula.
 

 On November 1, 1956, Dr. Aswell sent a letter to the defendant insurance company stating that he had discharged plaintiff from further treatment. However, the doctor told plaintiff that he should perform light duties on his return to work. In obedience to these instructions, plaintiff’s employer made light work available
 
 *379
 
 to him but, after a while, plaintiff Stopped working on the ground that he was suffering pain
 
 [1]
 
 and has not worked since. On December 11, 1956, he consulted Dr. George B. Briel, an orthopedic surgeon of Lake Charles, Lortisiana, who examined him and took X-rays of the injured foot. He saw Dr. Briel again on April 24, 1957 at which time another examination was made.
 

 Defendant paid workmen’s compensation and plaintiff’s medical bills during the time he was under the care of Dr. Aswell, the weekly payments extending from the date of' the accident until November 19, 1956, or approximately three weeks after it had been notified by Dr. Aswell that he had been discharged as being able to work. No notice was given the insurer of plaintiff’s alleged incapacity following his discharge by Dr. Aswell. However, on February 19, 1957, plaintiff filed this suit claiming that he is permanently totally disabled as a result of the accident and entitled to recover compensation for 400 weeks. Fie also alleged that he made repeated demands on the insurance company for additional compensation (which he failed to prove) and that defendant acted arbitrarily and capriciously in discontinuing payments of compensation, thereby entitling him to the recovery of the penalties provided for by R.S. 22:658, together with reasonable attorneys’ fees not exceeding $1,000.
 

 Defendant’s primary defense to the suit 'is that plaintiff has not suffered disability since his discharge by Dr. Aswell, it being contended in the alternative that, if it should be found that any disability presently exists, it is not permanent but temporary in character.
 

 In the lower court there was judgment for plaintiff as prayed for, together with statutory penalties and a $2,000 attorney fee. On appeal to the Court of Appeal, First Circuit, the judgment was affirmed as to plaintiff’s alleged total permanent disability but his claim for penalties and attorneys’ fees was disallowed. See 105 So.2d 276, 278. Both parties applied here for a review of the portion of the appellate court’s judgment adversely affecting them, the defendant contending that there was no evidence at all to sustain the finding that plaintiff was permanently totally disabled and plaintiff claiming that he was entitled to recover penalties and attorneys’ fees. The writs were granted and the case has been argued and submitted for our decision.
 

 The initial question for determination is whether the ankle injury suffered by plaintiff on July 9, 1956 has totally and permanently disabled him from doing work of any reasonable character, either because
 
 *381
 
 of a hairline fracture of the fibula or because the injury was such as to aggravate a prior arthritic condition of his foot. The Court of Appeal concluded that plaintiff received a hairline fracture to the ankle bone as a result of the accident; that all of the doctors “testified that this injury was aggravated by virtue of a prior arthritic condition in petitioner’s foot, therefore, although the actual injury itself has healed, the accident did aggravate a prior condition, which, of course, is compensable * * * ” and that, by the greater weight of the medical testimony, petitioner was unable to do work of any reasonable character at the time of the trial of the case, thus entitling him to the judgment rendered by the district court.
 

 It is our opinión that the Court of Appeal erred in its deduction that plaintiff’s disability from the accident is permanent, as we find no probative evidence to sustain this ruling.
 

 In support of his claim for total permanent disability, plaintiff submitted lay evidence consisting of the testimony of his relatives and friends who- state that he was a hard worker prior to the' accident; that his foot and ankle were sound prior to the accident, no abnormalities existing therein, but that, at the present time, his left foot is swollen, he walks with a de: cided limp and is unable to do any work.
 

 We do not find this testimony impressive, as it appears to materially contradict the clinical findings of plaintiff’s expert witness, Dr. George B. Briel, who examined. him on December 11, 1956 and April 24, 1957, taking X-rays of his injured foot. Dr. Briel, who testified by deposition taken on May 3, 1957, stated that plaintiff was suffering from a ligamentous tear and injury to the soft tissues of the foot and that the X-rays revealed deformities in the lower bone structure of the foot which were probably of long standing, evidently emanating from an injury predating the accident of July 9, 1956. However, he would not commit himself positively as to the antecedent injury which had caused the present arthritic abnormalities of plaintiff’s foot, stating that he could not be certain of this unless he was able to examine the X-ray pictures taken of the foot and ankle shortly after the accident at the request of Dr. Aswell, the attending physician.
 

 Dr. Briel did not find evidence of bone fracture resulting from the accident of July 9, 1956 but he opined that, due to the apparently pre-existing arthritic condition of the ankle, the soft tissues and ligaments of the foot had not healed and, while he was of the belief that plaintiff was unable to work on the two occasions he examined him (although he says that between the December 11, 1956 and the April 24, 1957 examinations 'plaintiff was getting rapidly well), he thought that the swelling and
 
 *383
 
 pain would completely subside within three or four months.
 

 The defendant’s medical evidence was given by Dr. Aswell and Dr. William Louis Meuleman, an orthopedist of Lafayette, Louisiana, whose testimony was taken out of court on July 10, 1957. Dr. Aswell testified in detail as to the treatment administered by him, which we have fully outlined above, and also respecting the three X-rays, which he had taken on July 17 and 27, and October 10, 1956. The last X-ray was the only one which revealed the presence of a hairline fracture of the lower fibula. However, Dr. Aswell says that there was no displacement and no reason to believe that plaintiff was disabled by it on October 19th, when the doctor discharged him as able to perform light work. He says he also noted the deformities in plaintiff’s foot but regarded them as an arthritic condition, stating, on cross-examination, that it was possible for the ligamentous tear suffered by plaintiff to aggravate the arthritis.
 

 The testimony of Dr. Meuleman, who examined plaintiff on May 29, 1957, was that the inner ankle bone disclosed more prominence (swelling) than the outside hone of the ankle (the fibula) and that the ankle revealed an incidental scar on the inner ankle bone, which he says plaintiff could not recall having previously injured. He was of the opinion that the X-rays taken by him and those of Dr. Aswell indicated that there was a degenerative or arthritic process in the foot; that, since the X-ray taken by him showed no evidence of the hairline fracture appearing in Dr. Aswell’s X-ray of October 10, 1956, there could be no doubt that the fracture had healed completely
 
 [2]
 
 and that it had no traceable connection with the arthritic, hypertrophic spurring or sclerosis which he found present in plaintiff’s foot. The doctor’s conclusion was that plaintiff was not suffering at the time of the trial from any of the consequences of the accident of July 9, 1956; that the deformity and arthritic condition of his foot had delayed the normal healing of the sprain or strain of his ankle resulting from the accident and that this ligamentous or soft tissue injury had completely disappeared on the date of his examination, May 29, 1957. The doctor was unable to testify positively that plaintiff would not suffer pain had he attempted to perform the work of a common laborer at the time of the trial. Nevertheless, he concluded without equivocation that the accident of July 9th did not aggravate the pre-existing state of the abnormality in plaintiff’s foot and had noth
 
 *385
 
 ing to do with the progression of the arthritis or hypotrophic spurring or sclerosis.
 

 It is apt at this juncture to observe that the clinical findings and medical opinions of Dr. Briel and Dr. Meuleman are practically identical, save in one or two respects. Dr. Briel was of the opinion that plaintiff was disabled at the time of his last examination in April, 1957 but that this disability was temporary, its probable duration being three or four months from the date of the examination, whereas Dr. Mueleman stated that, at the time of his examination in July, 1957, plaintiff was no longer disabled hut he could not say that he would be able to work without pain. The other difference between the doctors is that Dr. Meuleman, having before him the X-rays taken by Dr. Aswell shortly after the accident, was able to emphatically state that the deformities of plaintiff’s foot were due to a prior injury with subsequent arthritic changes, whereas Dr. Briel, while inclined to this view, would not commit himself absolutely, because he did not have the benefit of viewing the X-rays taken by Dr. Aswell. In this connection it is to be noted that, at the time Dr. Briel gave his testimony, the X-rays of Dr. Aswell were not available, having been misplaced. However, they had been recovered at the time of the trial and the case was held open in order to allow plaintiff to further examine Dr. Briel and present to him the X-rays of Dr. Aswell. Plaintiff’s counsel did not see fit to take advantage of this opportunity.
 

 From an analysis of the medical findings, which must be accepted as controlling,
 
 [3]
 
 the best that can be said is that, although there is evidence that plaintiff was totally disabled at the time of the trial, his disability resulting from the accident is of a temporary character. While he did suffer a hairline fracture of the fibula, the medical evidence is unanimous that there was no displacement and that this fracture had healed entirely by December, 1956, when plaintiff’s foot was X-rayed by Dr. Briel. The latter’s testimony, as well as that of Dr. Aswell and Dr. Meuleman, shows that the ankle injury of July 9, 1956 consisted of a ligamentous or soft tissue injury which did not heal normally because of the deformities existing in plaintiff’s foot resulting from an ankle fracture evidently pre-dating the accident which produced a degenerative or arthritic process in the foot, all doctors indicating (Dr. Meuleman positively stating) that the July 9th accident did not in any respect aggravate or in-
 
 *387
 
 crease
 
 the
 
 arthritis or hypertrophic spurring or sclerosis.
 
 [4]
 

 Accordingly, since the evidence does not warrant the conclusion that plaintiff’s disability is permanent, the compensation payable to him is governed by Paragraph (1) of R.S. 23:1221 providing that the schedule of payments for injury producing temporary total disability to do work of any reasonable character to be 65% of wagés during the period of disability “not beyond three hundred weeks”.
 

 Counsel for defendant proclaim that, since plaintiff’s own witness, Dr. Briel, estimated the probable duration of plaintiff’s disability to be 'three or four months from the date of trial, the provisions of R.S. 23:1222 are applicable. That section of the compensation law -vests the court with discretion to award compensation for a fixed number of weeks in cases of temporary total or partial disability whenever there is evidence upon which the probable duration of the disability can be based.
 

 We are not inclined to apply R.S. 23 :1222 to this case as we do not believe .that the evidence, taken as a whole, sufficiently establishes the probable length of time it will take for the injury plaintiff suffered on July 9, 1956 to completely, subside. Application of this provision of the law is purely discretionary with the Court and, in view of Dr. Meuleman’s testimony that, whereas plaintiff had recovered from the effects of the accident at the time he examined him, he was unwilling to say that plaintiff would not suffer pain if he attempted to perform his usual duties, it does not appear with any reasonable degree of definiteness that plaintiff will be able to work without experiencing pain within the near future. Hence, we hold that he is entitled to recover benefits for temporary total disability for a period not exceeding 300 weeks.
 

 So far as plaintiff’s demand for penalties and attorneys’ fees is concerned, we are in full accord with the views expressed by the Court of Appeal in its decision that the defendant insurance company did not act arbitrarily or capriciously in discontinuing compensation payments to plaintiff after November 19, 1956 as it had been informed by Dr, Aswell on November 1st that he had discharged plaintiff as able to return to work. No further action seems to have been taken by plain
 
 *389
 
 tiff indicating to the insurer that he was claiming additional compensation. Indeed, no formal demand was made prior to the filing of the suit.
 

 For the foregoing reasons, the judgment of the district court, as amended in the Court of Appeal by the rejection of plaintiff’s claim for penalties and attorneys’ fees, is further amended by reducing the maximum number of the weekly payments of compensation benefits from 400 weeks to 300 weeks and, as thus amended, the judgment is affirmed. Defendant is to pay all costs.
 

 [1]
 

 . This was plaintiff’s testimony but Mr. Sylvester, his employer, says that plaintiff told him he was stopping work because his wife was very ill with cancer.
 

 [2]
 

 . This conclusion was fortified by the evidence of Dr. Briel who states that the X-rays taken by him in December, 1956 of plaintiff’s foot and ankle showed no evidence of a fracture of the fibula.
 

 [3]
 

 . It is the well-settled rule that, where there is no material conflict in the medical evidence, lay testimony will not be considered in a workmen’s compensation case as to an employee’s disability. Powell v. Liberty Mutual Insurance Company, La.App., 80 So.2d 902 and Washington v. Swanner, La.App., 98 So.2d 913.
 

 [4]
 

 . Plaintiff’s counsel rely to some extent - on the statement of Dr. Aswell that it is
 
 possible
 
 for the injury received in the accident to have aggravated the arthritic condition of plaintiff’s foot. This stateT 'ment, which was given on cross-examination, is contrary to the evidence of both Dr. Briel and Dr. Meuleman, tbe orthopedic specialists. Besides, Dr. Aswell, a general pracitioner, gave his opinion as to a possibility (he did not say that it-was at all probable) .which cannot be regarded as proof of a fact.