HERGET, Judge.
From a judgment in favor of plaintiff, Alexander G. Porche, against defendant, Stone and Webster Engineering Corporation and Royal Indemnity Company, jointly and in solido, awarding Plaintiff workmen’s compensation at the rate of $35 per week not to exceed 400 weeks, beginning April 1, 1960, Defendants appealed. Plaintiff answered the appeal seeking to have the judgment amended to allow him penalties for the capricious and arbitrary refusal of Defendants-Appellants to pay benefits under the Louisiana Workmen’s Compensation Act as prescribed in LSA-R.S. 22:658.
Admittedly, on June 17, 1959, Plaintiff, while working as a welder in the employ of Stone and Webster Engineering Corporation, was struck on the great right toe by a piece of angle iron he was burning and the toe was fractured. Following the accident Plaintiff remained in the employ of defendant Stone and Webster and received full wages for his work as a welder until April 1, 1960 at which time his employment was terminated, according to the testimony of said Defendant’s witnesses and corroborated by Plaintiff, due to a reduction in employees by Defendant employer. Witnesses for Defendant in a supervisory capacity testified that in this period of nearly one year following the alleged injury about which Plaintiff complains he performed the duties incumbent upon him satisfactorily and without complaint.
Subsequent to his discharge Plaintiff employed counsel and filed the present suit. He predicates his claim for total disability on the contention he is a structural iron-worker and as a result of the injury to his toe he is no longer able to perform all of the duties devolving upon a structural iron-worker, especially climbing.
The record reflects following the injury to his toe Plaintiff was treated by Dr. W. R. Schaffarzick whose testimony was unavailable — counsel for all parties having stipulated Dr. Schaffarzick died prior to the trial of the case. The expert testimony offered on the trial of the case was that of Dr. William E. Smith, an orthopedist, called on behalf of Plaintiff, and Dr. Charles B. Cra-craft, called on behalf of Defendants. Dr. Cracraft related he first saw Plaintiff on May 13, 1960, at which time he was complaining of pain and swelling of the right great toe; however, he appeared to be in no acute distress. He observed there was no particular swelling of the toe at the time but there was tenderness, on pressure, over the proximal phalanx of the great toe. He observed the nail of the right great toe was thickened, but Plaintiff informed him this was true prior to the accident. He noted flexion of the joint of the great toe was markedly restricted on his examination. Dr. Cracraft had X-rays taken of the toe. These X-rays revealed the fracture was well healed. There was a very minute defect at the fracture line and there was also a small cystic demineralization in the first metatarsal. These abnormalities revealed by X-ray were found by the doctor to be of no significance. From his examination of the X-rays, he was of the opinion Plaintiff had sustained a fracture of the proximal phalanx of the right great toe and that same was well healed. He prescribed daily whirlpool treatments for a week and a metatarsal bar to be applied Plaintiff’s shoe. Dr. Cracraft next saw Plaintiff on the 23 of May, 1960, at which time he observed it was apparent Plaintiff could walk with a great deal more comfort and the motion had improved considerably in the joint. He next saw the Plaintiff on October 17 of the .same year. At that time he noted some limitation, very small, in the flexion of the great toe. He was of the opinion there was no swelling, no tenderness, and that Plaintiff on October 17, 1960 could apply pressure to the ball of his foot and this toe without the metatarsal bar and would thereby suffer no significant pain. The doctor categorized flexion into dorsiflexion (raising the toe from the floor) and plantarflexion (pointing the toe toward the floor). The limitation of flexion sustained by Plaintiff he *381 found to be minimal and confined to plantar. He was of the opinion as of October 17, 1960 the fracture of Plaintiff’s toe had healed so that he could do anything he wanted to.
Dr. William E. Smith, called by Plaintiff, examined him on October 31, 1960. Dr. Smith testified he observed a slight limitation of flexion of the right toe. However, following an examination of Plaintiff’s lower extremities to determine whether there was any basis for Plaintiff not using his right lower extremity as much as he would his left, he found nothing to substantiate a reason therefor. As to the range of motion of the toe itself, he observed: “ * * * Also, actually, I carried out a passive range of motion in the joints of this right great toe to compare to the active ranges of motion. I actually palpated the toe and actually put it through the extremes of motion that it would go through, to determine if the patient showed any objective evidence of pain to these extremes of motion.” On cross-examination Dr. Smith noted there was no swelling of Plaintiff’s toe and Plaintiff did not outwardly complain nor did he show any facial expressions suggesting pain when he was being put through the physical range of motion by the doctor’s examination. Dr. Smith affirmed, subsequent to his examination of Plaintiff on October 31, 1960, in his report to counsel for Plaintiff he said: “ * * * ‘In spite of this patient’s above mentioned disability I feel that he is capable of returning to work at the present time as a structural welder which would require bending, stooping, squatting and climbing ladders. I do not feel that this patient would have significant pain in the performance of these job activities.’ * * *” Tim notation in the report to the “patient’s above mentioned disability” has reference to the minimal inability of Plaintiff to flex his toe. Dr. Smith found only a slight disability in the plantarflexion of the toe and, in his opinion, such disability in no way prevented Plaintiff from performing the activities of a structural ironworker, and said: “ * * * J don’t feel that he has any significant disability whatsoever, functionally speaking.”
Accordingly, the opinion of both experts was, and is, that because of the fracture of the toe Plaintiff is in no way disabled to functionally perform the duties of an iron-worker. Though both doctors admitted lack of any personal knowledge of the activities engaged in by structural ironworkers, the duties required of ironworkers were described to them by counsel and they were in accord in their opinion same could be discharged by Plaintiff with no inhibition resulting from the fractured right toe.
Plaintiff called as witnesses his fellow employees who, without giving reason for Plaintiff’s inability to climb or perform the duties of a structural ironworker, gave conclusions Plaintiff could not perform the duties of a structural ironworker because such duties required 75;% of the time in climbing and Plaintiff could not do such climbing because of his injured right toe.
Subsequent to his discharge by defendant, Stone and Webster, Plaintiff admittedly secured and worked on three jobs as a structural ironworker. In a deposition given by Plaintiff, he testified he had done some climbing on these jobs, however, on the trial of the case he denied he had done any climbing. From the description of the method used by steelworkers in climbing columns or walking on girders and, additionally, giving weight to the uniformity of the doctors’ testimony unequivocally expressing the same view, we can see no impediment to Plaintiff’s performance of such activities because of the injury to his toe. Both doctors testified there was no dorsi-flexion limitation in the motion of Plaintiff’s toe and no significant plantarflexion, therefore we can see nothing from that standpoint to prevent Plaintiff’s performance of duties as a steelworker.
Though Plaintiff was admittedly employed originally with the defendant Stone and Webster as a structural steelworker, at the time he was injured and for *382 some time prior thereto, he was engaged in welding in the shop of Defendant where only on rare intervals was he required to do any outside work. Counsel for Defendant, accordingly, maintained that under the evidence tendered by Plaintiff, no showing was made Plaintiff was in any way disabled to perform the work of a welder. It was in that capacity he was working when injured and inasmuch as the evidence fails to show he was disabled in any way to perform the duties required of a welder, to the contrary the evidence reveals for some eleven months subsequent to the fracture of his toe such services were satisfactorily performed by Plaintiff, we are of the opinion Plaintiff has failed to sustain the burden placed upon him of proving his case. Williams v. Consolidated Underwriters, La.App., 50 So.2d 55. In workmen’s compensation cases as well as in civil cases the cases are legion, requiring no citation of authorities, that the burden rests on plaintiff to prove his case by a preponderance of the evidence and in view of the unanimity of the medical experts that Plaintiff is in no way disabled because of the injuries received by him in the accident of June 17, 1959 in which his right great toe was fractured — there being no conflict in the medical testimony — the Court is unwarranted in giving consideration to the uncorroborated testimony of Plaintiff and of the lay witnesses giving conclusions that Plaintiff could not perform the duties of a structural ironworker. Guillory v. Southern Farm Bureau Casualty Ins. Co., 237 La. 374, 111 So.2d 314; Davis v. Clyburn, La. App., 109 So.2d 126; Washington v. Swanner, La.App., 98 So.2d 913; Powell v. Liberty Mutual Insurance Company, La.App., 80 So.2d 902; McElroy v. Kennedy, La.App., 84 So.2d 256; Barnett v. Walther Bros. Co., La.App., 59 So.2d 487.
We further observe the testimony of the lay witnesses is of no assistance for same consists of their observations Plaintiff could not perform the duties of a structural steelworker and are conclusions rather than expressions of facts which could serve as a basis for such conclusions.
For these reasons, the judgment appealed from is reversed and it is now ordered that there be judgment in favor of Defendants and against the Plaintiff dismissing the suit at his costs.
Reversed.