LANDRY, Judge.
Defendants, Danos & Curóle Marine Contractors, Inc. and its insurer, Argonaut Insurance Company, appeal the judgment of the trial court awarding plaintiff workmen’s compensation benefits for total permanent disability. Appellants contend plaintiff should be awarded compensation for 100 weeks for partial permanent loss of a physical function, namely, a back and pelvic injury which produced permanent partial disability rated at 5% and 7% of the body as a whole, by the two medical authorities, respectively, who appeared as witnesses. Appellees also contend the trial court erred in awarding plaintiff benefits for total permanent disability on plaintiff’s uncorroborated lay testimony notwithstanding the expert witnesses were in agreement that plaintiff could resume his former employment as roustabout in the oil industry. We reverse the trial court on the ground that an error of law was committed in rendering judgment for plaintiff on his unconfirmed complaints of disability based on alleged inability to work without substantial pain.
Plaintiff’s injury during the course of his employment by defendant in a hazardous occupation is conceded. The sole issue is whether plaintiff is entitled to the benefits awarded below or whether his compensation should be limited to a maximum of 100 weeks pursuant to LSA-R.S. 23:1221, Section (4) (p).
Plaintiff was normally engaged by defendant in offshore work as a roustabout, which occupation entails hard physical labor. The disabling injury, however, occurred December 16, 1966, while plaintiff was’ engaged as roustabout at a dock in Leeville, Louisiana. At the time of injury, plaintiff’s duties required that he operate a fork lift and a cherry picker (a small crane) in the loading and unloading of barges and boats or in transporting equipment from one part of the dock to another. In addition, plaintiff hand loaded and unloaded groceries, vegetables, supplies, pipe, sacks of bolts and valves, and sacks of drilling mud and cement weighing as much as 100 pounds. The injury occurred when the fork lift plaintiff was operating turned over causing serious injuries as will hereinafter appear.
Plaintiff was taken to a hospital where he remained for 51 days. Initially, plain *886 tiff’s principal injury was diagnosed as a quadruple fracture of the pelvis. After leaving the hospital, plaintiff remained in bed at home for several weeks. Ultimately, plaintiff consulted Dr. George C. Batta-lora, Jr., Orthopedist, who discovered that plaintiff had also sustained a ruptured disc in plaintiff’s back. Following a laminecto-my by Dr. Battalora, plaintiff returned to work at the dock in Leeville but resigned after four or five days because of alleged pain in his back, hip and legs. Plaintiff subsequently obtained employment as a cook aboard a tugboat which occupation requires little physical labor. Plaintiff concedes he was medically discharged in March, 1968, and has not sought medical attention for his injuries since that time.
Plaintiff was initially treated for his pelvic fractures by Dr. J. A. Fisher whose report appears of record in lieu of his testimony. In his report Dr. Fisher expressed the opinion that plaintiff should be able to resume his former employment within four to six months from the date of the disabling accident.
Dr. Hugh Walter Brent, Jr., Orthopedist, first saw plaintiff on March 10, 1967, at which time plaintiff was on crutches. Examination disclosed that plaintiff could not bear weight on his left lower extremity. Dr. Brent could not determine the range of motion through plaintiff’s spine because of plaintiff’s condition. Prone straight leg raising was 60° on the left with manifestation of pain. The patient suffered from tenderness along the low back area and along the sciatic nerve on the left side. Also noted were weakness of the dorsi flexor of the great left toe; hypersensitivity to pin pricks, diminution of reflex of the left achilles tendon, and pa-resthesia of the entire left foot. X-rays revealed a fracture of the inferior rami of both pubi. Dr. Brent concluded there was nerve root compression due to a ruptured disc.
Plaintiff was next seen by Dr. Brent on March 4, 1968, after plaintiff had undergone surgery to correct the disc condition. Noted improvement in plaintiff’s condition was found as of this time. Plaintiff walked without crutches and without a limp and exhibited no acute discomfort. Plaintiff also displayed complete motion of the spine. Straight leg raising was 90% bilaterally. No anesthesia or paresthesia was present in either of plaintiff’s lower extremities. Reflexes in both lower extremities were bilaterally equal and normal. Dr. Brent found no weakness in the extensors or dorsi flexors of the great left toe and no sciatic tenderness or evidence of sciatic radiation. Tapping the skin of the calf of plaintiff’s leg resulted in some pain radiating into the foot. Dr. Brent considered this latter condition to be normal and could be expected to clear up with time.
Dr. Brent conceded that removal of a disc results in a weakening of back strength and enhances the likelihood of recurrence of difficulty from a prior back injury. He noted that the type of difficulty to be expected was discomfort rather than a rerupture of a disc and that such discomfort is equated to pain resulting from overactivity. He explained that the amount of pain depends on the degree of activity and that the cause of pain varies with each individual. He conceded that complaints of pain in plaintiff’s lower back and left leg after standing or walking for prolonged periods would be compatible with plaintiff’s injury. He found, however, no objective symptoms of pain on his second examination. He estimated plaintiff’s disability as 7% of the spine and considered that plaintiff was able to resume plaintiff’s former employment which Dr. Brent understood to be heavy work. He also stated that if plaintiff had returned to work and still complained of pain, he would have recommended lighter duty, but only after further examination which would have disclosed some objective symptoms to support complaints of continued pain.
Dr. George C. Battalora, Jr., Orthopedic Surgeon, hospitalized plaintiff on Septem *887 ber 13, 1967, for examination for complaints of back and leg pain. A myelo-gram revealed a lumbo sacral disc herniation which condition was surgically corrected on October 5, 1967. As of November 2, 1967, Dr. Battalora noted that plaintiff displayed normal back motion and leg raising. No atrophy of either leg was observed. On February 21, 1968, Dr. Batta-lora again saw plaintiff who then complained of back and leg pain after being up for five or six hours. Examination showed no functional impairment; normal back motion; no atrophy of the legs or thighs; no motor deficit; normal straight leg raising, and no tenderness of the spine. Plaintiff was discharged as completely cured. Dr. Battalora was of the opinion that plaintiff sustained a 5% permanent impairment of the spine but that plaintiff could do the same type of work that he was doing at the time of injury and could return to any type of work including that of roughneck or roustabout. Dr. Battalora declared unequivocally that it would be virtually impossible for pain to persist from the time of surgery until February 21, 1968, the day of plaintiff’s last visit, without objective symptoms thereof. He also stated that notwithstanding thorough examination on his part, he found no such symptoms.
Plaintiff’s testimony is that he could not return to the dock work he was doing at the time of injury which was less strenuous than working offshore as was his usual custom. He explained that weakness in his leg made it impossible for him to properly operate the brakes on a crane or cherry picker, which circumstance endangered his fellow workers. He also stated that after several hours work, he experiences pain in his lower back, hips and left leg, accompanied by swelling and cramps. He also stated he could not lift heavy objects and that while working as a cook on tugboats since his injury, he had tried to assist crews handling tow lines but was physically unable to do so. Plaintiff acknowledged that he had not consulted a doctor for his complaints since his last visit to Dr. Brent on March 4, 1968.
Where there is no material conflict in the medical evidence, lay testimony is inadmissible to prove disability in a suit for workmen’s compensation benefits. Guillo-ry v. Southern Farm Bureau Casualty Ins. Co., 237 La. 374, 111 So.2d 314; Butler v. American Insurance Company, La.App., 138 So.2d 862.
Plaintiff herein relies on Miller v. General Chemical Division, La.App., 128 So.2d 39; as authority for the rule that disability may be established by plaintiff’s unconfirmed testimony that he is disabled because of inability to work without appreciable pain. Our review of the cited authority discloses that it holds the opposite. In Miller, above, plaintiff’s claim for total permanent disability was rejected because his testimony that he could not work without pain was unsubstantiated by either lay or medical evidence. In Miller, above, plaintiff received an award for facial disfigurement resulting from acid burns.
In awarding recovery herein, the trial court relied primarily upon Powell v. Travelers Insurance Co., La.App., 117 So. 2d 610, and Watson v. Floyd Electric Co., La.App., 75 So.2d 361. In Powell, above, it was held that the percentage of disability of the body as a whole does not determine disability for compensation purposes, but that disability depends upon the inability of the employee to perform his former duties. The court in Powell also noted that a slight disability of the body as a whole may produce total permanent disability depending upon the circumstances of each case. With this rule we are in complete accord. We note, however, that Powell is readily distinguishable from the case at hand in that in Powell one medical authority who examined plaintiff two days before trial, testified that plaintiff was not then able to resume his former employment of roughneck. In the case before us, plaintiff’s alleged inability to resume employment is uncorroborated by either lay or ex *888 pert testimony. Moreover, it is refuted unanimously by the expert witnesses.
Watson, above, also held that the percentage of bodily disability as a whole does not necessarily determine whether compensation is due but that total permanent disability may result from a 15 or 20% bodily disability as a whole if such percentage of bodily disability renders an injured workman incapable of performing- his former duties without substantial pain. Again, we agree with this statement of the law, but note that in Watson the court found that as of the date of discontinuation of compensation payments, one medical authority was of the opinion that it would take an additional six months to one year after plaintiff resumed some sort of work before plaintiff’s disabling condition would disappear. We have no similar medical evidence in the case at hand.
The evidence discloses that plaintiff was totally disabled until his final discharge by Dr. Battalora on February 21, 1968. It also appears he was paid compensation for total permanent disability from the date of his injury until or beyond said discharge.
It is significant that despite his complaints of pain, plaintiff did not seek medical attention therefor within a year of trial. Plaintiff’s unsupported testimony as to his inability to work without substantial pain is insufficient to sustain his claim for compensation benefits. Guillory v. Southern Farm Bureau Casualty Ins. Co., above.
Considering the views herein expressed, it is unnecessary that we pass upon appellant’s alternative claim that plaintiff should be limited to recovery of benefits provided in LSA-R.S. 23:1221, Section (4) (p).
Accordingly, the judgment of the trial court is reversed and set aside and judgment rendered herein in favor of defendants, Danos & Curóle Marine Contractors, Inc. and Argonaut Insurance Company, and against plaintiff Milton Arceneaux, dismissing and rejecting said plaintiff’s claims at plaintiff’s cost.
Reversed and rendered.