BOLIN, Judge.
Lewis B. Krouse sued Parnell, Inc., James Gandy Cable Tool Contractor, and United States Fidelity & Guaranty Company for damages resulting from an accident on June 25, 1966, in which Krouse sustained accidental injuries, necessitating the surgical removal of his right eye.
The suit against Parnell was for workmen’s compensation benefits, penalties and attorneys’ fees. The action against Gandy and United States Fidelity was predicated on allegations that Krouse’s injuries were caused by the negligence of an employee of Gandy, and, alternatively, against Gandy and United States Fidelity for workmen’s compensation benefits, penalties and attorneys’ fees. Gandy and United States Fidelity answered the petition, admitting the occurrence of the accident, but alleging Krouse was a borrowed employee of Gan-dy at the time of the accident and, as a consequence, their only responsibility to Krouse was for payment of workmen’s compensation benefits.
Gandy and United States Fidelity also filed a third party demand against Parnell seeking reimbursement of all workmen’s compensation benefits which it had previously paid to Krouse, and, alternatively, for one-half of the compensation benefits paid or which it might become obligated to *856 pay in the future. Parnell, Inc. filed a third party demand over against its insurance broker, McGee & Sons, Inc., claiming that McGee, as the agent handling its insurance, had advised Parnell it did not need workmen’s compensation insurance; that acting upon this advice Parnell can-celled its workmen’s compensation insurance prior to Krouse’s accident. Based on the foregoing allegations Parnell contends McGee should be held legally liable for any judgment imposed on Parnell which otherwise would have been covered by workmen’s compensation insurance.
United States Fidelity, as Gandy’s workmen’s compensation insurer, paid such benefits to Krouse at the rate of $35 per week for a period of 100 weeks, after which no further compensation was received by Krouse from any of the defendants. United States Fidelity also paid $801.57 medical expenses on behalf of plaintiff.
After trial, but prior to judgment, Krouse died of causes unrelated to the accident and his heirs were substituted as plaintiffs.
Prior to judgment in the lower court, the tort claim against Gandy was abandoned. It had been conceded by Parnell that Krouse was Gandy’s “borrowed employee”. Subsequent to the trial the case of Maryland Casualty Company v. Liberty Mutual Insurance Company, 254 La. 489, 224 So.2d 465 (1969), was decided by the Supreme Court, which held that, as between the insurers of the “borrowing” and “lending” employers, each was liable for its virile share or one-half of the compensation benefits owed the “borrowed” employee. Consequently, the plaintiff insurer, having paid the whole debt, was entitled to contribution from the other.
The lower court found Krouse totally and permanently disabled because of the accident and rendered judgment in plaintiffs’ favor, in solido, against Parnell, Gan-dy and United States Fidelity & Guaranty for disability benefits until Krouse’s death, rather than only 100 weeks for the loss of an eye, and for penalties and attorneys’ fees. There was also judgment in favor of Gandy and United States Fidelity under its third party demand against Parnell for contribution equal to one-half of the total sum payable to plaintiffs. The court also held McGee, as the insurance broker for Parnell, was liable to the latter for any payments Parnell would be required to make, less the penalties and attorneys’ fees.
All of the foregoing matters decided in the lower court are presently before this court. With regard to the issue of contribution between the “lending” and “borrowing” employers, appellants, Gandy and United States Fidelity & Guaranty, ask for clarification of the wording of the judgment and amendment thereof.
At the time of his injuries Krouse was approximately 65 years of age. During all of his adult life his occupation had been that of a common laborer, carpenter’s helper and oil field worker. For several years preceding the accident he had been performing the duties of a “roustabout”, but more recently he was employed by Parnell to do general oil field maintenance work. He was classified by his employer as a “contract pumper” and was paid a salary of $300 per month, together with an allowance for the operation of his privately-owned truck. His duties for Parnell were primarily to keep the machinery and pumps operating in a field where several producing wells were located, which required him to drive a truck, crank pumps, help in laying water lines, etc. Mr. Parnell perhaps best described his duties when he said Krouse was required to do “just general oil field work”.
On the day of the accident James Gandy Cable Tool Contractor was in the process of “pulling” a well, and Krouse was loaned to Gandy to assist in this “pulling operation”. In connection with this operation he went up on the floor of the rig to help other employees where he was struck on the head with a large metal wrench, the injury ultimately leading to the surgical removal of his eye.
*857 Krouse was examined by several physicians whose testimony was elicited during the trial of the case. Their conclusions were essentially the same, which were that the loss of an eye reduces a person’s depth perception and peripheral vision. The doctors were asked to give an opinion as to whether or not Krouse would be able to perform the duties of a “contract pumper” without difficulty and without endangering himself or his fellow employees. Most of the doctors were of the opinion he would have been able to perform this type of work.
It is contended that, based upon the medical testimony, the lower court erred in finding the employee totally and permanently disabled. This argument rests primarily on the principal that where there is no conflict in the medical testimony lay testimony should not be considered by the court in determining the extent of an employee’s physical disability. Many cases have been cited as authority for this argument, including Guillory v. Southern Farm Bureau Casualty Insurance Company, 237 La. 374, 111 So.2d 314 (1959); Ezell v. Employers Insurance of Wausau (La.App., 2 Cir. 1968), 212 So.2d 500.
While we agree with the general principle of law enunciated in Guillory and Ezell, we think the rule should be used with caution and limited in its application to the facts of each case. The principle was never intended to exclude testimony that might be relevant in the trial of a particular case. For example, in the instant case the physicians who gave an opinion as to whether this employee would be able to return to his former occupation based their conclusion upon their appreciation of what duties that occupation entailed. Lay testimony was offered to show the type of work Krouse was doing. This testimony should not be excluded but should be considered along with the medical testimony in order for the court to reach a conclusion as to Krouse’s ability to perform that work.
An employee is totally and permanently disabled if he is unable to perform work of the same or similar character he was performing at the time of the accident. La.R.S. 23:1221(2); Cooley v. Insurance Company of North America (La.App., 3 Cir. 1968), 216 So.2d 388; Knispel v. Gulf States Utility Company, Inc., 174 La. 401, 141 So. 9 (1932).
There can be no doubt Krouse could not perform the duties he was performing at the time of the accident, i. e., assisting in the “pulling operation”. The evidence convinces us he was also rendered unable to perform “similar work” which he was accustomed to performing, i. e., “roustabout” and other general oil field work.
We find the evidence supports the judgment of the lower court in decreeing Krouse totally and permanently disabled under the Workmen’s Compensation Act.
The claim for penalties and attorneys’ fees is based on La.R.S. 23:1201, which requires that the failure to pay workmen’s compensation must have been arbitrary, capricious or without probable cause. We do not think this is a proper-case for the imposition of penalties. Gan-dy’s insurer had paid Krouse for 100 weeks, which was all the law required for the loss of an eye. The question of whether or not the employee was entitled to further benefits depended primarily upon the doctors’ reports. All medical information furnished to United States Fidelity indicated Krouse was able to return to his former occupation. Under these circumstances we think the lower court erroneously held the actions of either Gandy, United States Fidelity or Parnell in refusing to make further compensation payments were arbitrary or capricious. It is contended Parnell should be cast for penalties and attorneys’ fees because it never paid any compensation benefits to Krouse. We find no logic in this argument since United States Fidelity & Guaranty was making the initial compensation payments and Parnell had no *858 more obligation to continue payments than did Gandy or the latter’s insurer.
We next consider the question of whether McGee & Sons, Inc. is liable, under the third party demand, to Parnell, Inc. It has been stated, as a general proposition, that an insurance agency may be liable to a prospective insured where the actions of the insurance agent are shown to be such as to warrant an assumption by the insured that he was adequately covered by suitable insurance. See Arceneaux v. Bellard, (La.App., 3 Cir. 1963), 149 So.2d 444, and cases cited. However, in order to impose such liability on the agency it is necessary for the insured to prove by a preponderance of evidence either that defendant had agreed to provide the insurance coverage which plaintiff wanted or had misled plaintiff into thinking he was covered. The factual situation in the cited cases was much different from that in the instant case.
Mr. Parnell testified he had previously carried all of his insurance with a different agent, but had transferred his insurance, including workmen’s compensation, to the McGee Agency approximately a year and a half before the accident in question. Approximately six months later the workmen’s compensation policy was cancelled. He testified he consented for McGee to cancel his workmen’s compensation insurance upon the advice of Wayne McGee, vice-president, that because Krouse was a contract employee no compensation insurance was necessary. The testimony of Gordon McGee and his son, Wayne McGee, is in direct conflict with that of Mr. Parnell. Wayne McGee testified the workmen’s compensation policy was can-celled March 1, 1964, or three months after his agency acquired the Parnell account. He further testified Parnell told him he no longer had a need for workmen’s compensation insurance because he no longer had any employees. From our review of the testimony on this question we are convinced the lower court committed error in casting McGee & Sons, Inc. under Parnell’s third party demand. Since the testimony of these witnesses was submitted by deposition the lower court was in no better position to evaluate the testimony of Wayne McGee than is this court. Not only does the evidence fail to preponderate in favor of the third party demand, but Parnell’s contention is unrealistic and contrary to common logic and ordinary practice.
For the reasons assigned the judgment of the lower court is affirmed in part, reversed in part and recast as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of the plaintiffs, Florence Krouse, Vernon Krouse and Mrs. Betty Douglas Jones, nee Krouse, and against the defendants, Parnell, Inc. and James Gandy Cable Tool Contractor with its insured, The United State's Fidelity & Guaranty Company, in solido, for workmen’s compensation payments of $35 per week from June 25, 1966 through February 8, 1970, together with all medical expenses, subject to a credit of $3,500, previously paid as compensation benefits, and $801.57, paid for medical expenses; all past due compensation benefits to bear legal interest from due date of each until paid.
It is further ordered, adjudged and decreed that there be judgment herein in favor of James Gandy Cable Tool Contractor and The United States Fidelity & Guaranty Company and against Parnell, Inc. for contribution equal to one-half of the $4,-301.50, being the amount previously paid to plaintiffs.
It is further ordered that plaintiff’s claims for penalties and attorneys’ fees be rejected.
It is further ordered that Parnell’s third party demands against third party defendants, McGee & Sons, are likewise rejected.
Parnell, Inc., James Gandy Tool Contractor and United States Fidelity & Guaranty Company are cast in solido for all costs.