BOUTALL, Judge.
This is a workmen’s compensation suit brought on behalf of a 17 year old laborer by his mother as natural tutrix. The employee suffered leg injuries, and was paid compensation for a period of time, and then refused further compensation. As a result, suit was brought both against the employer, Tom Hicks Transfer Company, Inc. and its insurer, Gulf Insurance Company. The trial court rendered a judgment dismissing plaintiff’s suit. From that judgment, plaintiffs appeal.
Petitioner, James McGlothen was employed by Tom Hicks Transfer Company, Inc., for several months as a laborer, and a portion of his duties, in which he was engaged at the time of his accident, was to assist in the loading and unloading and placement of pipe in the employer’s yard. At the end of the working day of January 16, 1970, while rolling pipe, his leg was caught between pipes rolling together, and he sustained a fracture of the right medial malleolus.
He was immediately taken to the hospital where the fracture was set and his leg placed in a cast. However, the fracture became displaced, and on January 19, 1970, he was referred to Dr. Raymond (Jack) Horne, Jr., an orthopedic surgeon. Dr. Horne operated on the fracture and placed a two-inch surgical screw in the medial malleolus in order to stabilize it. He treated the patient from that time onward.
By April 27, 1970, Dr. Horne concluded that the treatment had achieved an excellent result and that the fracture had healed. He felt that the employee could return to work on or about the first part or the middle of May.
The patient never returned to Dr. Horne’s care, initially because he was apparently imprisoned for more than 20 days on a criminal charge which was later dismissed. Thereafter the patient contends that he attempted to return for further treatment, but that Dr. Horne refused to treat him unless he paid the medical expenses of further treatment. This is denied by the doctor.
In any event there is nothing in the record indicating any further treatment by any doctor, and there is only evidence of having been seen by Dr. Walter Brent, Jr., to whom he was referred by his attorney for examination on August 4, 1970, and a later examination of the patient by Dr. Horne on January 19, 1971, in connection with this suit.
Despite the complaints of pain and swelling by the petitioner, of such severity that *590 he was unable to work, the record is devoid of any medical testimony other than that of the two doctors, and each of these doctors testifies that he could find no basis for either the complaints of pain or the swelling, such as related by the petitioner. Indeed, the testimony of both doctors clearly state that the fracture healed with an excellent result, that the scar tissue resulting from the operation gave no problem, and that the screw which had been inserted in the medial malleolus offered no problem. Both physicians testified that certainly the plaintiff could return to his former employment, and could do the job that he had been doing, or any similar job, without any distress or danger.
Dr. Brent, in his examination on August 4, 1970, felt that it might not be wise for plaintiff to kick pipes at that time with his injured foot, but felt that he could do the work involved without any problems. He found a 5% lack of motion in the ankle, but this presented no impediment to his ability to work. Dr. Horne found no such lack of motion nor did he think that plaintiff would have any problem with kicking pipes. The trial court apparently felt that Dr. Brent’s slight reservations about kicking heavy pipe were overcome by the weight to be assigned Dr. Horne’s testimony, inasmuch as he was not only more familiar with plaintiff’s employment conditions, he having himself been a roughneck in the oil fields at one time, but also because Dr. Horne was the treating physician who had examined and treated the patient over a period of time, as opposed to one examination. See: Johnson v. R. P. Farnsworth and Company, 186 So.2d 405 (La.App. 1st Cir., 1966), and the cases cited therein.
In his reasons for judgment the trial court stated:
“Considering all of the evidence, the court cannot, in the absence of some medical testimony in support of plaintiff’s allegations, conclude that any further compensation payments are due.”
We believe the evidence to amply support this conclusion of the trial judge.
The only evidence in the record of any problems presented in connection with plaintiff’s leg is the testimony of plaintiff and his mother that the ankle hurt and continuously swelled up. There is also some testimony that at a later time, the plaintiff began to experience back pain. As remarked above, no basis for any of these complaints could be discovered by either the treating physician or the doctor to whom plaintiff’s lawyer sent him for an examination. The trial judge apparently felt that the testimony of plaintiff and his mother were of little weight and we must agree with him. See: Guillory v. Southern Farm Bureau Casualty Insurance Company, 237 La. 374, 111 So.2d 314 (1959); Richard v. Arthur G. McKee & Company, 209 So.2d 165 (La.App. 4th Cir., 1968).
Both doctors testified unequivocally that the plaintiff could return to work, and that while he may occasionally experience some pain as a result of the injury, it certainly would not prevent him from working. We are of the opinion that the medical testimony, that the plaintiff can return to work, justifies the termination of the disability benefits, and indeed, we find no disability on the part of the plaintiff at the time of his discharge from benefits. Jackson v. American Mutual Liability Insurance Company, 242 So.2d 903 (La.App. 3rd Cir., 1971).
The trial judge gave a complete and well reasoned summary of the evidence presented, and concluded that at the time the workmen’s compensation benefits were stopped, the plaintiff was able to resume his regular duties. We fully concur with his reasons and his conclusions. The judgment of the lower court is correct and accordingly it should be affirmed.
Affirmed.