171 So.2d 811 (1965)
James T. JOYNER, Plaintiff and Appellee,
v.
L. L. BREWTON LUMBER COMPANY, Defendant and Appellant.
No. 1340.
Court of Appeal of Louisiana. Third Circuit.
February 10, 1965.
Rehearing Denied March 3, 1965.
*812 Hiram J. Wright, Winnfield, for defendant-appellant.
Cunningham & Cunningham, by W. Peyton Cunningham, Jr., Natchitoches, for plaintiff-appellee.
Before SAVOY, FRUGE and HOOD, JJ.
HOOD, Judge.
This is a workmen's compensation suit instituted by James T. Joyner against his employer, L. L. Brewton Lumber Company, based on injuries allegedly sustained by plaintiff on February 17, 1961. Judgment was rendered by the trial court in favor of the plaintiff, awarding him compensation benefits based on total and permanent disability, and the defendant has appealed.
Plaintiff has been paid compensation benefits at the maximum rate from the date of the accident until November 22, 1963, or for a period of 144 weeks. The only issue presented on this appeal is whether the plaintiff has had any disability since November 22, 1963, which results from or can be related to the injuries which he sustained on February 17, 1961.
The evidence shows that an accident occurred on February 17, 1961, during the course of plaintiff's employment by defendant as a member of a logging crew, and that as a result of that accident plaintiff sustained an injury to his right knee. As plaintiff was assisting other employees in skidding logs into a truck, a log was caused to move or to swing around and to strike his right leg just behind the knee. As a result of the blow plaintiff was knocked a distance of about fifteen feet and then caused to fall on his knees in mud about ten inches deep. Plaintiff contends that as a result of this accident he sustained injuries to both of his knees, and that he has been totally disabled since that time.
Plaintiff testified that his right knee "locks" on him, causing him to fall or to stumble frequently. He states that it "gets out of place" or "locks" and becomes swollen "every two or three weeks, or a month or two months," and that on each such occasion it remains swollen for a period of from two or three days to a week. He testified that his leg is getting worse, and that because of the condition of his right knee he has been unable to return to his former type of employment since the date of the accident.
Pursuant to an agreement of counsel, the reports of five doctors who had examined or treated plaintiff were received in evidence in lieu of their testimony. None of these doctors testified at the trial or by deposition. The medical evidence, therefore, consists solely of the written reports which were submitted by these doctors prior to the trial.
Immediately after the accident occurred, plaintiff was taken to Dr. G. M. Rodgers, a general practitioner, who diagnosed his *813 condition as "sprain, tibial collateral ligament, possible torn cartilage," of the right knee. Dr. Rodgers gave plaintiff first aid treatment and referred him to Dr. C. R. Reed, Jr., an orthopedic surgeon. Dr. Rodgers apparently did not see plaintiff after that initial examination, and he expressed no opinion as to the nature or extent of his disability.
Dr. Reed first examined plaintiff on February 20, 1961, and concluded that as a result of the accident he had sustained a "sprain, tibial collateral ligament," of the right knee. Another examination made on March 7 revealed that plaintiff had a torn internal semi-lunar cartilage of the right knee, and on that date Dr. Reed performed surgery, removing the semi-lunar cartilage from that knee. Plaintiff thereafter was seen and treated periodically by Dr. Reed until July 17, 1961, when he was discharged by that doctor with the statement, "Plaintiff may return to his former occupation at this time. Permanent disability of the right knee should not exceed 10%."
Dr. T. E. Banks, an orthopedic surgeon, examined plaintiff initially on August 22, 1961, at which time plaintiff's complaints still related only to his right knee. As a result of that examination Dr. Banks concluded that the right knee was unstable and that plaintiff at that time was not able to return to his former employment. He felt, however, that with exercise plaintiff woud be able to return to "gainful employment." Dr. Banks examined plaintiff again on May 1, 1962, fourteen months after the date of the accident, and at that examination plaintiff for the first time complained of trouble with his left knee as well as the right one. From this examination, Dr. Banks concluded, "that this man has shown maximum recovery and is able to return to work in his present condition." Plaintiff was examined by Dr. Banks a third time on November 13, 1963, and following that examination he reported that "Full recovery is felt to be present." In his report he stated, "I see no reason why this man cannot return to work at his former employment at the present time," and, "I certainly do not find enough pathology in either knee to justify his statements that he is unable to return to work at the present time." Dr. Banks further stated that even if he should experience a locking of the left knee, a condition of which he complains but which would not be detected by the examining physician, that that condition would have no connection with the accident which occurred in February, 1961.
Dr. T. W. Meriwether, another orthopedic surgeon, examined plaintiff on October 31, 1963, at which time plaintiff complained primarily of discomfort of his left knee. After examining both knees Dr. Meriwether concluded:
"In summation, I cannot find an organic physical basis for this patient's present complaints of pain. The musculature of the leg shows normal muscular development and no evidence of muscle atrophy as from disuse. I cannot find, therefore, an orthopedic diagnosis that would prevent this man from returning to his normal job activities at any time he so desires." (Emphasis added.)
Finally, plaintiff was examined by Dr. A. E. McKeithen, a general practitioner, on January 7, 1964. The following is the complete report submitted by this physician:
"Mr. J. T. Joyner has continued disability of his right knee, secondary to injury, in February, 1961. Surgery in March, 1961, to this knee but he continues to have disability which prevents him, in my opinion, from pursuing his usual employment. There also is a disability of the left knee which probably represents cartilage damage."
As we have shown, the report submitted by Dr. McKeithen is brief. There is nothing in the record to show how extensive an examination was made by this physician, what history was given to him by plaintiff, *814 or what objective signs of injury or disability were found.
According to the record, therefore, plaintiff was examined by five doctors, two of whom are general practitioners and three of whom are orthopedic surgeons. One of the orthopedic surgeons was also the treating physician. Of all these medical experts, the only one who expressed the opinion that plaintiff is disabled was a general practitioner who examined plaintiff on only one occasion, almost three years after the accident occurred, for purposes other than for treatment. All three of the orthopedic surgeons, including the treating physician, expressed firm opinions that plaintiff had recovered and was able to return to work by the time compensation payments were discontinued.
The lay evidence, other than plaintiff's own statements, consists of the testimony of his wife, of two of his sons, his nephew, his brother-in-law, and of three of his neighbors. His wife and two sons testified that "practically every week-end" plaintiff's leg would "swell on him. He couldn't move his knee. He wasn't able to go hunting or do anything." These statements obviously are exaggerated, because plaintiff himself concedes that his knee does not swell on him that often and that he frequently goes hunting. His nephew testified that he hunted with plaintiff often during the 1962 and 1963 hunting seasons. Plaintiff's brother-in-law, who visits in the home three or four times a week, states that he has seen plaintiff's knee swollen only three or four times during the past three years, one of which times was before surgery was performed on it in 1961. One neighbor, who visits in plaintiff's home every week, observed the knee swollen on two occasions, and each of the other two neighbors who testified saw the knee swollen on only one occasion. The lay testimony, although conflicting as to the condition of plaintiff's knee, shows that plaintiff has not been employed and has performed no heavy labor since the date of the accident, but that he did go hunting frequently in 1962 and in 1963.
Under our settled jurisprudence, the opinion of a general physician ordinarily is not accorded as much weight as that of an orthopedist if the injury or alleged disability is of such a nature that it falls within the special field of orthopedics. Shuff v. Liberty Mutual Insurance Company, La.App. 3 Cir., 134 So.2d 707; and Thibodeaux v. McNabb, La.App. 3 Cir., 164 So.2d 594. Also, in weighing the testimony of medical experts, ordinarily the opinions expressed by the treating physician are accorded more weight than those expressed by a physician who has made an examination later for purposes other than for treatment. Taylor v. Hawkins, La.App. 2 Cir., 153 So.2d 192; Istre v. Molbert Brothers Poultry & Egg Company, La.App. 3 Cir., 125 So.2d 436 (cert. denied).
In the instant suit, plaintiff's alleged injury and disability is of such a nature that it falls within the special field of orthopedics. All of the orthopedic surgeons who examined or treated plaintiff are of the firm opinion that he has fully recovered and is no longer disabled. We think the opinions expressed by the experts in that field are entitled to greater weight than those expressed by the one general physician who concluded that plaintiff was disabled. Dr. Reed, in addition to being an orthopedic surgeon, was also the treating physician, and for that added reason we think the opinion which he expressed is entitled to more weight than the opinion expressed by Dr. McKeithen, who examined plaintiff much later on only one occasion for purposes other than for treatment.
In our opinion, plaintiff has failed to prove that he has been disabled since November 22, 1963, the date on which compensation payments were discontinued. On the contrary, we think the great preponderance of the medical evidence is to the effect that plaintiff had fully recovered from his injuries and was able to return to his former type of employment by that time.
*815 Plaintiff argues, however, that substantial weight should be given to the lay evidence presented at the trial, contending that the lay evidence establishes that plaintiff is still disabled.
Our law is settled that where the medical evidence is in conflict, the court may properly look to the lay testimony in resolving the question of disability. Blanchard v. Travelers Insurance Company, La.App. 1 Cir., 121 So.2d 515; Vidrine v. Employers Mutual Liability Insurance Company of Wisconsin, La.App. 1 Cir., 103 So. 2d 292. Where there is no material conflict in the medical evidence, however, lay testimony will not be considered in a workmen's compensation case as to the employee's disability. Guillory v. Southern Farm Bureau Casualty Insurance Company, 237 La. 374, 111 So.2d 314; Shuff v. Liberty Mutual Insurance Company, supra; Butler v. American Insurance Company, La. App. 4 Cir., 138 So.2d 862.
In the instant suit, the medical evidence is not so conflicting or so unevenly balanced as to justify a dependence upon lay testimony. As we have already pointed out, the great preponderance of the medical evidence is to the effect that plaintiff has had no disability since the date on which compensation payments were terminated. Under those circumstances we feel that we would not be justified in considering or in relying upon the lay testimony in resolving the issues presented here. Furthermore, because of the conflicts in the lay testimony which have been noted, we are not impressed with that evidence.
Finally, plaintiff argues that the medical evidence shows that he has a ten per cent disability of the leg, which in itself is sufficient to show that he is disabled from performing heavy labor. In our opinion, the evidence does not show that plaintiff has a ten per cent disability of his leg. In the final report submitted by Dr. Reed, he stated that "Permanent disability of the right knee should not exceed 10%." This report was submitted on July 17, 1961. We do not interpret that statement as being to the effect that plaintiff either had a ten per cent disability at that time or that he would have that degree of disability from and after November 22, 1963. The orthopedic surgeons who examined plaintiff after the final report was submitted by Dr. Reed found no disability of the right knee. In our opinion, therefore, the evidence fails to establish that plaintiff has had any disability of his right knee after the date on which the payment of compensation benefits was discontinued.
It is well established that in a workmen's compensation case, as is generally true in other types of civil actions, a plaintiff must establish his claim to a legal certainty and by a reasonable preponderance of the evidence. Jackson v. International Paper Company, La.App. 3 Cir., 163 So.2d 362 (cert. denied); Elliott v. Insurance Company of North America, La.App. 2 Cir., 159 So.2d 313 (cert. denied). In the instant suit we conclude that plaintiff has failed to meet this burden of proof, and that the trial court erred in awarding compensation benefits to plaintiff.
For the reasons herein set out, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant, L. L. Brewton Lumber Company, and against plaintiff, James T. Joyner, rejecting plaintiff's demands and dismissing this suit at plaintiff's cost. The costs of this appeal are assessed to plaintiff-appellee.
Reversed.

On Application for Rehearing.
En Banc. Rehearing denied.