STOULIG, Judge.
This is an appeal by a claimant, Donald A. Jackson, from a district court judgment awarding workmen’s compensation benefits of $35 per week for 100 weeks, together with medical expenses, statutory penalties of 12 percent, and attorney’s fees of $600, subject to a credit of $420 previously paid. Appellant maintains that he is totally and permanently disabled and, accordingly, is entitled to 400 weeks. No answer to the appeal was filed by the defendant, The Phoenix Insurance Company, compensation carrier, and therefore it has acquiesced in the trial court’s award.
In its responsive pleadings, the defendant admitted that the plaintiff was injured during the course and in the scope of his employment, which was hazardous in nature. There remains for consideration, however, the nature, extent and disabling effects of the employee’s injury.
Uniquely, the expert medical testimony adduced on behalf. of the respective litigants is confirmatory rather than contradictory relative to plaintiff’s injuries. The dispute arises over its interpretation in relation to the employee’s ability to perform the customary duties of his occupation as a carpenter-cabinetmaker.
The evidence reflects that on April 28, 1966, plaintiff was a passenger in his employer’s truck when it became involved in an accident, as a result of which he sustained the following injuries: a bilateral basal skull fracture, resulting in a transitory facial paralysis, lasting one week; a permanent residual of' tearing of the left eye, attributable to facial nerve injury, and, occasioned only by eating; a brain concussion; a comminuted fracture of the right clavicle producing a 5 percent permanent residual loss of use of the right shoulder ; lacerations of the scalp; a perforated left ear drum, causing a progressive loss of hearing, estimated to be 45 percent on the date of trial, and further aggravated by tinnitus (a ringing or buzzing sound of the ear). Mr. Jackson also suffered a stabilized loss of 17 percent of his hearing in the right ear.
As a result of these injuries complainant was confined to Mercy Hospital for 21 days. In 52 office visits extending from March 3, 1967, through March 10, 1970, Mr. Jackson was treated for his left eye and loss of hearing by Dr. Frank S. Norman, expert otolaryngologist, at which time he was considered to have received the maximum benefits of medical science. In addition, the plaintiff received medical attention from Dr. Christian Haindel, an otolaryngologist, on eight occasions from May 25 through September 23, 1966. He was also examined by Dr. Robert Azar, ophthalmologist; Dr. Richard Levy, neurologist; and Dr. Raymond Kitziger, or *513 thopedist, whose reports were stipulated into evidence in lieu of their testimony.
Although the trial court did not render findings of fact or reasons for judgment, it is obvious from the nature of its award ($35 for 100 weeks) that the employee was being compensated for the serious permanent impairment of a physical function as authorized under LSA-R.S. 23:1221(4) (p). If we determine that the injuries to Mr. Jackson do not prevent him from performing the usual and customary duties of his occupation free of pain and without serious impairment of his capacity, then he is entitled to compensation for the loss of function of a member as granted by the trial court. However, if we conclude that the employee because of a residual incapacity can no longer perform the duties of a carpenter, then he is entitled to disability benefits for the duration of such incapacity.
In reviewing the expert testimony we note a lack of specific medical expression as to the ability of the employee to perform all of the salient functions of a carpenter-cabinetmaker. More specifically, Dr. Azar, in his ophthalmological report, concluded that the employee is “fully visually qualified to perform whatever tasks he was engaged in prior to this alleged injury.” (Emphasis added.) He noted the chief complaint, as of August 29, 1969, to be “headaches.” Visual deficiency is not one of the alleged causes of disability; however headaches are.
The neurological findings of Dr. Levy confirm partial deafness in the left ear and the tearing of the left eye due to a facial nerve injury. He further states: “I see no reason why this man cannot continue in his current occupation.” It should be noted that this doctor lists plaintiff’s job as a “construction supervisor,” and his conclusion about the continuance of employment must,be related to the duties of this particular work, as opposed to those of a carpenter-cabinetmaker. His report also reflects complaints of generalized headaches.
Dr. Norman, an otolaryngologist, to whom the plaintiff was referred by Dr. Levy, concerns himself with the loss of hearing and the tearing of the eye. In his testimony, he makes no reference to the employee’s ability to return to work. He, too, acknowledged Mr. Jackson’s complaint of headaches, the constancy of which he could not explain except to attribute it to the bizarre nature of the nerve injury.
Another otolaryngologist, Dr. Haindel, who examined plaintiff shortly after the accident, testified to the transitory nature of the facial paralysis and the loss of hearing. He, too, referred to the plaintiff’s complaint of headaches, the cause of which he assigned to the blow on his head and was of the further opinion that close proximity to buzz saws or high frequency drills would aggravate the ringing in the ear. This witness testified that the ear condition would not cause pain nor would it be affected by height. In this instance, too, the medical witness passed no judgment on the ability of the employee to perform the duties of a carpenter.
The last medical evidence was a stipulated report of Dr. Kitziger, which reflects a 5 percent permanent residual disability of the right shoulder and the discharge of the employee to return to work on May 12, 1966. This report was rendered on a printed data sheet and is lacking in detailed information, particularly as it relates to the type of employment and the resumption of the duties of employment.
Thus, from the foregoing resume of testimony it must be concluded that there is no medical expression as to the ability of the employee to perform the significant duties of a carpenter-cabinetmaker. While we are mindful of the fact that the jurisprudence of this State, expressed in the case of Lee v. Royal Indemnity Company, 149 So.2d 606 (La.App. 1st Cir. 1963), enjoins us from considering lay testimony in determining the disability of an employee, where no conflict exists in the expert medical evidence, we are of the *514 opinion that the case of Carpenter v. Employers Mut. Liability Ins. Co. of Wis., 178 So.2d 486 (La.App. 1st Cir. 1965), writ refused 248 La. 444, 179 So.2d 431, permits a consideration of such testimony when it does not contradict the medical testimony, where, as in the instant matter, the medical evidence is inconclusive.
Testifying as lay witnesses were the plaintiff, his wife, and two employees. The gist of Mr. Jackson’s testimony was to the effect that he suffered constantly from headaches, requiring up to twelve aspirins a day for relief; that climbing made him dizzy; that he was unable to nail freehand because of his shoulder injury; and that he could not do sustained work for more than two hours before becoming exhausted and suffering with headaches.
Mrs. Jackson substantiated that her husband’s rest at night was frequently disturbed because of headaches which he complained of constantly, and that after the accident he did not work regularly, but oftentimes remained at home.
His two employees, Mason Hill, Jr., and Alfredo Sabunge, testified that on occasions plaintiff worked for an hour or two and then complained of dizziness and headaches; that frequently he would leave the job and return home, and, in some instances, did not report at all; and that he was unable to assist them in the hanging of Sheetrock.
In determining the extent of Mr. Jackson’s disability, we must consider the degree and duration of his incapacity to perform the duties of his trade as a carpenter. Such a determination involves not only the consideration of expert testimony, but also the physical facts and circumstances demonstrated in the record. Also, where the claimant has received multiple injuries, their combined effect upon his ability to do all of the salient duties of his work must be weighed in assessing his disability, even though, individually, they are not capable of producing this result. Total disability as a matter of fact differs substantially from total disability as a matter of law within the contemplation of the compensation statute.
According to the evidence, the plaintiff, at the time of his injury, had been in the employ of O’Keefe Interiors for two years as a carpenter-cabinetmaker. During this period he established an impressive work record for workmanship and also for dependability, never being absent a single day. During this time he also maintained a part-time repair business in his off hours and on weekends.
Upon his return to work following his injury, Mr. Jackson was assigned the job of supervisor, which did not require him to perform any of the physical functions of a carpenter. He remained in this capacity until leaving this employment. Upon terminating his employment, the plaintiff then devoted his full activities to what had been his part-time business. However, as the lay testimony corroborated, he was unable to perform the duties of his occupation for any sustained period of time without impairment and pain.
The contrast in the employee’s work record before and after the accident clearly indicates a sudden and abrupt change in the working habits of Mr. Jackson. From a hard working, dedicated and dependable employee, he has now become an individual who cannot, for any reasonable period of time, perform the normal functions of his trade. This condition has prevailed for the past three years, and there is no basis for assuming that it will improve.
The acknowledged controlling jurisprudence interpreting disability under our compensation statute is expressed by the Supreme Court in the case of Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9, 12 (1932):
“The disability should, we think, be deemed total to do work of any reasonable character, within the intendment of the law, whenever it appears that the employee, due to the injury, is unable to *515 perform work of the same or similar description that he is accustomed to perform. When he is unable to perform such character of work, his occupation, due to the injury received in his employer’s service, has been taken from him, and he is in the world without an occupation. In his position he is wholly incapacitated, and what little he may learn or be able to do thereafter will likely be done under greater difficulties, placing him at a disadvantage even in securing what work he may be able to perform. Cf. Bradbury’s Workmen’s Compensation, p. 235, § 2.”
See also Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1 (1953).
This holding was enunciated in the case of Costanzo v. Southern Farm Bureau Casualty Ins. Co., 124 So.2d 621, 625 (La. App. 3d Cir. 1960):
“The rule is well settled in Louisiana that when an employee cannot perform his customary and usual duties without suffering substantial pain and discomfort he is considered totally and permanently disabled. Yarbrough v. Great American Indemnity Co., La.App., 159 So. 438; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6; Lee v. International Paper Co., La.App., 16 So.2d 679; Stansbury v. National Automobile & Casualty Ins. Co., La.App., 52 So.2d 300.”
Also see Flowers v. E. M. Toussel Oil Co., 190 So.2d 147 (La.App. 4th Cir. 1966).
A carpenter is considered totally and permanently disabled when he is unable to perform the duties of his trade by reason of pain or diminution of strength, although he is able and has performed the duties of a carpenter’s foreman. The mere fact that the injured employee is successful in obtaining employment other than in his regular occupation does not deprive him of the rights to compensation for total, Ranatza v. Higgins 18 So.2d 202 (La.App. Orl. permanent disability. Industries, 1944).
Though the medical record of the plaintiff reflects varying percentages of impairment of certain functions, we are of the opinion that he is totally and permanently disabled and should be awarded compensation on this basis. In this respect we are persuaded by the observation made in the case of Gallow v. Wilson P. Abraham Construction Company, 197 So. 2d 680, 681 (La.App. 4th Cir. 1967):
“In the landmark case of Knispel v. Gulf States Utilities Co., the organ for the Supreme Court crystalized the rationale emanating from the jurisprudence to the effect that an individual is totally disabled when, because of an injury, he is unable to perform work of the same or similar description as that which he is accustomed to perform. Moreover, the exact medical percentage of disability is not definitive as to the totality of the incapacity incurred by the person as the result of an injury.”
We are convinced that as a result of his injuries, Mr. Jackson is not capable of performing the usual and customary duties of a carpenter, for which trade he is fitted by training and experience.
This suit is a direct action against the compensation carrier of the employer, and, therefore, the right to penalties and attorney’s fees is governed by the provisions of LSA-R.S. 22:658 regulating contracts of insurance, as opposed to LSA-R.S. 23:1201.2 of our compensation statutes, which applies only to employers without compensation insurance coverage. The lower court assessed statutory penalties and attorney’s fees, obviously concluding that the insurance company was arbitrary, capricious and acted without probable cause in failing to make the compensation payments. By its failure to appeal, or alternatively to answer the plaintiff’s appeal, the insurer has concurred in the correct *516 ness of these findings of the trial court and acquiesced in its award.
Under our jurisprudence, the statutory penalty of 12 percent becomes executory only as to delinquent weekly compensation benefits and those which become more than 60 days overdue in the future. In the case of Redding v. Cade, 158 So.2d 880 (La.App. 3d Cir. 1963), the court observed at page 884:
“However, the Supreme Court itself, in awarding penalties against the ‘total amount of the loss’ under LSA-R.S. 22:658 (which applies to insurers only), has always, so far as we could find, provided for such 12% penalty to be due only on weekly compensation payments then due or which might become overdue more than sixty days in the future. Seal v. Lionel F. Favret Co., 238 La. 60, 113 So.2d 468; Humphreys v. Marquette Casualty Co., 235 La. 355, 103 So.2d 895; Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695.”
And in fixing a reasonable attorney’s fee as authorized under the statute (LSA-R.S. 22:658), the court in the Redding case held at page 885:
“As further stated in the leading decision of Cain v. Employers Casualty Co., 236 La. 1085, 110 So.2d 108, 111, the penalty attorney fee is fixed and determined ‘upon the basis of the attorney’s skill and the amount of work performed by him in the prosecution and collection of the total claim’. The Cain decision also recognized that the maximum attorney fee provided by the compensation act itself (which in the interest of the claimant limits his attorney’s fees to less than that prevailing in other types of personal injury suits), is not a determining factor in the amount of penalty attorney’s fees to be assessed against the employer’s insurer which arbitrarily fails to pay compensation.”
Applying this jurisprudence to the facts of the instant matter, we are of the opinion that the sum of $3,000 is reasonable compensation for the services rendered by the attorney on behalf of the claimant.
For these reasons the judgment of the lower court is reversed and set aside, and it is now ordered that there be judgment herein in favor of the plaintiff, Donald A. Jackson, and against the defendant, The Phoenix Insurance Company, for compensation in the sum of $35 per week from July 21, 1966, for the duration of disability, not exceeding 400 weeks; with legal interest on each overdue payment from its due date until paid, subject, however, to a credit for compensation paid of $420 and the additional sum of $5,665.36 deposited in the Registry of the Court. It is further ordered that a penalty of 12 percent on all weekly compensation payments which are now due, be assessed against The Phoenix Insurance Company, with a like penalty on all such payments which might become 60 days overdue in the future, together with an attorney’s fee payable to the plaintiff in the sum of $3,-000. All costs are to be paid by appellee.
Reversed and rendered.