297 So.2d 698 (1974)
Raymond GRIGSBY
v.
ARGONAUT INSURANCE COMPANY and Baton Rouge General Hospital.
No. 9888.
Court of Appeal of Louisiana, First Circuit.
June 28, 1974.
*699 J. Hereford Percy, Jr., Baton Rouge, for appellant.
Richard B. Nevils, Baton Rouge, for appellees.
Before SARTAIN, BAILES and VERON, JJ.
VERON, Judge:
This is a suit filed by Raymond Grigsby against his employer, Baton Rouge General Hospital, and its compensation insurer, Argonaut Insurance Company, to recover maximum benefits under the Louisiana Workmen's Compensation Act for an alleged total and permanent disability incurred as the result of an injury during the course of plaintiff's employment.
The trial court denied recovery to the plaintiff and he has appealed. After reviewing the entire record, including the medical reports admitted into evidence, we conclude that the judgment of the trial court was correct, and adopt the excellent written opinion of the trial judge as our own:
"The facts out of which the accident arose can be briefly stated as follows. Petitioner has been employed by the Hospital as a janitor/porter for the past nineteen years. In that capacity, he is required to perform general janitorial duties including, but not limited to, cleaning floors and walls, dusting, sorting laundry, and running errands.
"On December 8, 1969, at approximately 7:45 a. m., petitioner was cleaning hospital stairwells pursuant to instructions given him earlier that morning. At that time he was on the second floor of the hospital (i. e., the floor on which the operating room is located). He was walking down one of the corridors on the hospital's south wing in the direction of the operating room. As he approached a set of swinging doors he glanced behind him only to notice a convergent mobile stretcher laden with a patient and maneuvered by two aides. Petitioner opened one of the swinging doors to enable the entourage to pass and, in so doing, was struck on the side of the low back by the stretcher.
"Petitioner testified that immediately after the accident he experienced a peculiar feeling in his right leg. He continued working until 9:00 a. m., at which time he reported the incident to Mrs. Agnes Russell, head of the Housekeeping Department at the hospital. Mrs. Russell requested him to continue working and see if the pain subsided. Petitioner returned to work but found it necessary to report back to Russell after lunch due to increased back pain. An accident report was filed. X-rays were subsequently *700 taken but were negative as to any findings of fracture or abnormality.
"Petitioner testified that he returned to work the day following the accident, but experienced pain in the low back region. He continued to experience pain in the low back, hip, and right leg, and sought initial treatment from Dr. Charles Prosser. Dr. Prosser referred him to Dr. Charles McMains. Petitioner was also examined by Dr. Moss Bannerman. Pursuant to an agreement between counsel, the medical reports of Drs. McMains and Bannerman were introduced in lieu of their testimony. The medical evidence therefore, consists solely of written reports which were submitted by these doctors prior to trial.
"Dr. McMains initially treated petitioner on January 5, 1970, at which time he was complaining of pain in his back with radiation of pain down his right leg. The doctor noted that the patient was treated conservatively and was seen on several occasions thereafter.
"Petitioner was last seen on November 3, 1970, having been able to continue working in the interim. At that time, continued complaints of pain were noted along with limitation of motion in all directions. Dr. McMains diagnosed the condition as a rupture of the intervertebral disc at the fourth lumbar level on the right side. However, the doctor indicated that petitioner could still perform his activities and hence, myelography and surgery were not considered at that time. The doctor further opined that it would take very little to disable petitioner from working.
"Dr. Moss Bannerman, another orthopedic surgeon, examined petitioner on March 15, 1971, at which time he complained of pain in his lower back radiating down the right leg and into the foot. Examination revealed a good range of motion, normal reflexes and sensation, and normality in motion of knee, hip and ankle. The doctor noted the absence of any appreciable limp. X-rays were taken of the low back and right hip area, and were essentially negative.
"Dr. Bannerman concluded that petitioner had suffered a contusion of the lumbar back with mild sensory residual. He noted the absence of any signs of a ruptured disc. The doctor considers petitioner's complaints to be mild in nature and nondisabling. He prescribed correctional shoes and low back exercises. Apparently, petitioner was seen only once by Dr. Bannerman.
"A second report submitted by Dr. McMains indicates that petitioner returned to his office on January 11, 1973. At that time, the doctor noted marked improvement. Petitioner still experienced discomfort in the lumbar region upon sudden turning or bending. Although petitioner still experienced right leg pain, the severity thereof had diminished. Examination further revealed tenderness well localized at the L-4, L-5 area. Dr. McMains reaffirmed his belief that petitioner is suffering from a ruptured disc. He did note, however, that petitioner was doing satisfactorily and surgery was not indicated at that time.
"Petitioner testified that he continued to work despite his pain. He stated that on occasions his back pain would be so severe that he would just sit down and wait until it subsided. He has not complained to co-employees or superiors for fear of being laid off. Grigsby further testified that on June 12, 1972, he was given a new job sorting linen and running errands. Although his back continues to bother him, his new job is not physically demanding and can be performed without a great deal of discomfort.
"On cross examination, petitioner denied ever requesting an easier job prior to the 1969 accident. He admitted that despite his pain and suffering he missed only one day of work from the date of the *701 accident up through the calendar year of 1970. He further testified missing one day of work in May of 1971. Both absences were unrelated to the accident.
"No citation need be given for the well established proposition that medical evidence is the primary guideline in the determination of a claimant's disability. Petitioner relies on the medical reports of Dr. McMains, who has examined him on a number of occasions. Although Dr. McMains opined that petitioner suffers from a ruptured disc, he does not categorically state that he is totally and permanently disabled from doing his customary duties.
"Defendants rely on the report of Dr. Bannerman in which it is concluded that petitioner suffered a contusion of the low back with mild sensory residual. The doctor further noted the absence of any evidence of a ruptured disc.
"The Court is cognizant of the maxim that testimony, or in this case the report of the treating physician, should be given greater weight than that of other examining physicians. However, application of the above principle in the case at bar does not preponderate a conclusion of total and permanent disability. The Court is of the opinion that the medical reports are in hopeless conflict.
"It is well established in Louisiana jurisprudence that in workmen's compensation cases where there is no material conflict in medical evidence lay testimony will not be considered as to an employee's disability. Guillory v. Southern Farm Bureau Casualty Insurance Company, 237 La. 374, 111 So.2d 314 (1959); Cambre v. Hanover, 236 So.2d 318 (La. App. 4th Cir. 1970); Joyner v. L. L. Brewton Lumber Company, 171 So.2d 811 (La.App. 3rd Cir. 1965), Rehearing Denied.
"A related rule, also well recognized, is that in the event medical evidence is in hopeless conflict or inconclusive, the Court may give serious consideration to the testimony of lay witnesses regarding the extent of disability. Guillory v. Southern Farm Bureau Casualty Insurance Company, (Supra.); Jackson v. Phoenix Insurance Company, 252 So. 2d 511 (La.App. 4th Cir. 1971); Vidrine v. Employers Mutual Liability Insurance Company of Wisconsin, 103 So.2d 292 (La.App. 1st Cir. 1958). In the opinion of this Court the medical evidence is inconclusive and justifies dependence upon lay testimony.
"In addition to plaintiff's own testimony the Court heard the testimony of Vera Johnson, an employee at the hospital. Mrs. Johnson was one of the aides guiding the stretcher when it struck Grigsby. She corroborated petitioner's rendition of how the accident occurred.
"Miss Carrie Barkley is employed by the hospital as a maid in the central supply room. When the accident occurred she was working in the operating room. At that time, she knew petitioner and talked to him on occasion. Although her conversations with him were quite impersonal, he never complained of any pain or discomfort. At the present time she sees him every day at work, but has never been apprised by petitioner of any discomfort.
"Lillie Jackson was employed by the hospital as an operating room maid at the time of the accident. She is acquainted with petitioner and sees him daily. She testified that she has frequent chats with him at work, however, she has never heard him complain about his back.
"Mr. Thomas G. Terry, Personnel Director at the hospital, testified in regard to petitioner's personal records. Mr. Terry stated that petitioner never missed a day of work until ten months after the accident. From December 8, 1969, through October 7, 1971, petitioner performed the same duties he had been engaged in *702 prior to the accident. During that two year interim he missed only four days of work.
"Terry further testified that the hospital records indicate an accident report was filed on December 8, 1969, by Grigsby. The witness also read to the Court other entries from petitioner's personal file which indicate he was reprimanded on more than one occasion for excessive fraternization with other employees during working hours. The Court notes with particular interest an entry dated May 3, 1966, (i. e., three years prior to the accident) which reveals that he was transferred from cleaning and waxing floors to sweeping stairwells. The transfer resulted when he complained that he could not lift or maneuver the buffing machine.
"In addition to the above three witnesses, defendants called Mrs. Agnes Russell, an Executive Housekeeper of the hospital for the past thirteen years. She stated that she has supervisory control over all custodial employees, and would be the appropriate person to receive complaints of any nature, including accidents or pain on the job.
"Mrs. Russell remembered the accident report filed by petitioner on December 8, 1969. She further testified to having spoken with him on May 3, 1966, at which time he stated he could no longer work on the floor. He complained of back trouble and of inability to lift or operate the buffing machine. Pursuant to these complaints she assigned him to the stairwells where he remained until June 12, 1972. On that date, he was assigned to the linen room where he is presently located. Mrs. Russell testified that petitioner's duties now encompass inspecting operating room linen and refolding it. She further stated that petitioner was assigned to the linen room only because he was not doing his work in the stairwells. The linen room is adjacent to her office, enabling her to observe petitioner's working habits. Mrs. Russell categorically denied that the job transfer was due to petitioner's physical inability to perform more strenuous jobs. To the contrary, she opined that work in the linen room is no less exerting than mopping a stairwell.
"On rebuttal petitioner testified that he had no recollection of telling Mrs. Russell he could not operate the buffing machine.
"It is elementary that in a suit for workmen's compensation benefits, the nature and extent of disability are issues of fact which must be determined in the light of the facts and circumstances of each individual case. Griffin v. Hochendel, 263 So.2d 474 (La.App. 1st Cir. 1972) Writs Refused.
"Equally well settled is the rule that a claimant in a workmen's compensation case must establish his demands by a preponderance of the evidence and to a legal certainty as in any other civil suit. This burden is not relieved by the liberal construction placed upon the statute. Hebert v. Your Food Processing and Warehouse Inc., 248 La. 197, 177 So.2d 286 (1965); Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So. 2d 1 (1963); Monistere v. Louisiana Department of Hospitals, 273 So.2d 594 (La.App. 1st Cir. 1973) Rehearing Denied; Griffin v. E. C. Hochendel, 263 So.2d 474 (La.App. 1st Cir. 1972) Writ Refused.
"The medical evidence is conflicting as to the exact cause of petitioner's residual pain. Needless to say, if petitioner has proved that he continues to suffer genuine pain, which the medical evidence indicates could reasonably be a disabling residual of the work-accident, the petitioner has borne his burden of proving a residual disability by a preponderance of the evidence, even though he may not have proved the precise cause thereof. Disability from work caused conditions, whether a contusion or low line disc, or *703 a ruptured disc is compensable. Petitioner is obliged only to prove disability and not the precise medical cause thereof. Gates v. Ashy Construction Company, Inc., 171 So.2d 742 (La.App. 3rd Cir. 1965) Writ Refused, and cases cited therein.
"The Court must also concern itself with the degree of petitioner's pain. In Glidden v. Alexandria Concrete Company, 242 La. 625 [626], 137 So.2d 894 (1962), the Supreme Court stated:
"... So it is said that plaintiff is disabled as a consequence of the discomfort he must bear, should he resume the occupation of truck driver, for the law will not deprive an injured person of compensation when, although he is physically able to perform his tasks, to do so means he must suffer substantial pain and discomfort.'
"It would be illogical, however, to treat this doctrine as encompassing all degrees of discomfort and make a complete or "`good-as-new'" recovery essential before an employer may stop compensation payments. The pain must be substantial enough to be disabling in that it either prevents the worker from carrying out some of the functions of his job or, where the pain is not so intense as to hinder the worker's fulfillment of his duties, it must be shown that performance of the work would be deleterious to his health. This would be the case where going back to work was possible but doing the work might retard the worker in regaining complete recovery of his health.'
"From the above language, it is clear that where the complaints of pain are not sufficiently severe to disable the worker from carrying out some of the functions required of him or is not sufficiently severe so as to be deleterious to his health, recovery is denied under the work-in-pain rule.
"According to the evidence, petitioner returned to work the day of the accident. The evidence further establishes that petitioner lost no time from work as a result of the injury. To the contrary, Grigsby admits that he worked from the date of the accident (December 8, 1969) through September 12th of the following year, before missing eight hours of work due to illness. The fact that petitioner continued employment at the same job for more than two years following the accident indicates that he was not disabled. Likewise, his failure to complain to those who worked with him tends to negate disability.
"The Court is convinced that petitioner is suffering some back pain. The evidence indicates that complaints of back trouble were noted by his supervisor as far back as 1966. However, petitioner appears to be working quite well, and assuming he has pain, it is not severe enough to prevent him from carrying out his normal job duties.
"Therefore, after due consideration of all the facts and circumstances involved in this matter, this Court is of the opinion that the petitioner failed by a preponderance of the evidence to establish that he is totally and permanently disabled and that he would exercise substantial pain if he performs the same type of work he was performing prior to the accident."
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.