YARRUT, Judge.
Plaintiff, an injured carpenter, sues his employer and its insurer for workmen’s compensation, statutory penalties and attorney’s fees. There is no dispute about the nature of the employment or that a disabling injury was sustained in March, 1958, while on the job, nor the amount of compensation due if totally and permanently disabled. The only dispute is with regard to the extent and duration of plaintiff’s disability, and whether he can now do the same kind of carpentry work as when injured, without pain, and without danger to himself and fellow-workers.
In a judgment for plaintiff giving him only partial relief, and denying penalties and attorney’s fees, all parties have appealed.
Two orthopedists, Dr. Plaslam for plaintiff, and Dr. Redler for defendant, both agree that plaintiff suffered a painful injury described by Dr. Haslam as:
“ * * * a fracture of his right collar bone, and probably a cervical sprain-sprain of the neck. In addition to this, X-rays showed some hypertrophic or degenerative arthritic changes in his neck. When I first saw him, his fractured clavicle was not completely healed from the X-ray standpoint, but we could not detect motion in it when I pushed on it, and it showed a little bit of angulation at the fracture site.”
Dr. Haslam testified plaintiff was able to resume work in June, 1959, and Dr. Redler discharged him February 20 1959. The District Court allowed full compensation to February 20, 1959, and partial compensation of $5.25, not to exceed 400 weeks.
When Dr. Haslam was asked if he found any limitation of motion of the injured shoulder in his first examination, he answered that the shoulder lacked 15 degrees of abduction, and 10 degrees each of internal and external rotation.
Dr. Haslam’s last report of June 2, 1959, indicates plaintiff’s ability to work as a carpenter. He found such marked improvement that he felt plaintiff was no longer disabled from doing the work of a carpenter since “there was no limitation of motion of the shoulder and clavicle is solid, and his neck not so stiff as to preclude his doing such work.”
When asked about plaintiff’s hypertrophic degenerative arthritis that was discovered in the X-rays, Dr. Haslam testified that it was not uncommon for these changes to be discovered in a man 51 years of age, and that he could not say with any degree of certainty that the arthritis had been symptomatic before or only after the accident, but that it was entirely possible that plaintiff suffered pain before the accident as a result of the arthritis.
Plaintiff admitted working for several employers after his injury, doing the same character of work, but said it pained him. His wife and fellow-employees testified similarly; the fellow-employees stating that they had to do his heavy work because of his inability, notwithstanding plaintiff *657 was employed to and was apparently doing, the same work as when injured. When plaintiff’s work with his new employers terminated, it was because of lack of work, not because of inability.
Four doctors who examined plaintiff for defendants did not testify, not having been summoned. Plaintiff contends the Court should invoke the rule that the failure of a party to summon witnesses is presumptive proof that their testimony would have been unfavorable to such party.
Regarding this failure, the record shows that the reports of these doctors were furnished plaintiff’s counsel long in advance of the trial. Plaintiff could have offered their reports in evidence or asked for a continuance to have them summoned, but did neither. The record indicates these diagnoses and reports were made shortly after the accident, and are only to the effect that plaintiff suffered a fracture of the right clavicle and cervical sprain. Plaintiff has shown no prejudice by the non-appearance of these doctors. His contention in this regard is without merit. Parnell v. City of Monroe et al., La.App., 98 So.2d 820.
About two weeks after defendants’ doctor first stated plaintiff was able to resume his work, defendants discontinued the compensation payments, and plaintiff seeks the statutory 12% damages and 20% attorney’s fees under LSA-R.S. 22:658 for arbitrarily and without good cause discontinuing the payments.
As defendants were sustained in the majority of their contentions, their refusal to pay compensation after their doctor advised that plaintiff could return to work, cannot be held to have been arbitrary and without good cause.
In Brannon v. Zurich General Accident and Liability Insurance Co., 224 La. 161, 69 So.2d 1, the Supreme Court held that a carpenter (30% disabled) was totally and permanently disabled within the meaning of the Act. However, we believe the injury suffered in the Brannon case can be differentiated. In that case, claimant injured his left knee severely, was subjected to much pain and eventually submitted to a patel-lectomy. A carpenter is required to climb ladders, work on scaffolds and on roofs, and in many instances labor while in various bending positions. The law does not expect nor contemplate that a worker, in order to make a living, must work in pain, or when it will materially increase the hazards to his own health and safety, or to his fellow-employees.
With only a IS'% disability of movement to the plaintiff’s right shoulder, there is no proof of hazards to health or safety. The record reveals that plaintiff can now perform all the duties of a carpenter, with the exception of occasional, though questionable, arthritic pains, due to pre-existing hypertrophic changes, and not from the accident. Accordingly, he is to be considered partially, though permanently, disabled and is entitled to compensation under LSA-R.S. 23:1221(3). •
The record is not too clear about the wages of claimant at the time of injury; though claimant’s wife testified her husband was receiving $49 per week at the time of the trial. The Court has reason to believe that the claimant was making at least $49 per week at the time of his injury.
Applying the provisions of LSA-R.S. 23:1221(3) the compensation due claimant would be less than the minimum set forth in LSA-R.S. 23:1202. Consequently, claimant is entitled to the statutory minimum of $10 per week from February 21, 1959, continuing for the duration of said disability, not to exceed 300 weeks, from date of March 19, 1958, subject to the proper credits.
For the reasons assigned, the judgment appealed from is amended by increasing the compensation for permanent partial disability from $5.25 per week to $10 per week, to continue during said partial disability, not *658 to exceed 300 weeks, from March 19, 1958, and as thus amended the judgment is affirmed; defendants to pay all costs of appeal.
Amended and affirmed.