149 So.2d 606 (1963)
Samuel LEE
v.
ROYAL INDEMNITY COMPANY.
No. 5711.
Court of Appeal of Louisiana, First Circuit.
January 18, 1963.
Rehearing Denied February 22, 1963.
Certiorari Refused April 17, 1963.
Breazeale, Sachse & Wilson, by Boris F. Navratil, Baton Rouge, for appellant.
Taylor, Porter, Brooks, Fuller & Phillips, by David M. Ellison, Jr., Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
Plaintiff herein, Samuel Lee, whose occupation is that of a common laborer, instituted this action to recover maximum benefits payable under the Workmen's Compensation Law of this state. Named as defendant herein is Royal Indemnity Company, compensation insurer of plaintiff's employer, Stone & Webster Engineering Company. The learned trial court rejected plaintiff's demands and plaintiff has appealed.
By stipulation of record, it appears that plaintiff sustained a serious injury to his left ankle on April 16, 1959, said injury being admittedly incurred during the course and within the scope of plaintiff's employment by his aforesaid employer. It further appears that following his injury, plaintiff was paid compensation benefits at the rate of $35.00 weekly from the date thereof to *607 and including August 6, 1960. Additionally, it is further stipulated that defendant paid accrued medical expense in the sum of $864.85 incurred in the treatment of plaintiff's injury.
On appeal plaintiff complains that the lower court erred in rejecting his claim for compensation for total permanent disability and, alternatively, that the trial court erred in declining to award him compensation for partial permanent disability. In the further alternative, plaintiff maintains error was committed in the rejection of his demand for benefits for temporary total disability. In the still further alternative it is contended error resulted from the refusal to award compensation herein for permanent partial loss of the use or function of a bodily member, namely, plaintiff's left leg. Finally, it is contended the lower court erred in declining to award plaintiff penalties and attorney's fees for arbitrary and capricious failure and refusal to pay any benefits whatsoever subsequent to August 1, 1960, despite plaintiff's continuing disability thereafter.
This cause went to trial on the merits on January 12, 1962. Only two medical experts appeared herein, namely, Dr. P. L. Chesney, General Surgeon, who attended plaintiff following his injury and Dr. Charles B. Cracraft, Orthopedic Surgeon, who first examined plaintiff, for purposes of medical evaluation only, on May 6, 1960, more than one year following plaintiff's injury. The testimony of these experts being in agreement to the effect that plaintiff was able to resume his former employment as of August 1, 1960, on the trial below, able counsel for defendant objected to the introduction of lay evidence, consisting of the testimony of plaintiff, his family and acquaintances to establish that plaintiff was disabled by virtue of his being unable to work without appreciable and significant pain. Defendant's objection in this regard was predicated upon the pronouncements in Guillory v. Southern Farm Bureau Casualty Insurance Company, 237 La. 374, 111 So.2d 314; Davis v. Clyburn, La.App., 109 So.2d 126 and Powell v. Liberty Mutual Insurance Company, La.App., 80 So.2d 902, inter alia, to the effect that, in the absence of material conflict in the medical testimony, lay evidence may not be considered in determining disability in a suit for workmen's compensation benefits. Esteemed counsel for defendant vigorously contends our brother below erred in admitting lay evidence of disability under the aforesaid circumstances and reurges his said objections thereto before this court. It goes without saying, however, that he considers the trial court's ruling on the merits eminently correct and importunes our affirmation thereof on the medical testimony alone.
The record reflects that before any lay testimony was sought to be introduced herein the testimony of Doctors Chesney and Cracraft was first taken and made a matter of record in this proceeding.
As suggested by illustrious counsel for defendant, the testimony of the two medical experts which is substantially in accord and materially without conflict, establishes that plaintiff was fully recovered and able to resume his former employment, without significant pain, as of August 1, 1960.
Within a few hours of the occurrence of the accident in question, Dr. Chesney was summoned to attend plaintiff in Baton Rouge General Hospital to which institution plaintiff was taken immediately following his injury. X-ray examination revealed plaintiff to have sustained a single injury, namely, "tri-malleolar or `cotton' fracture of the left ankle," with lateral displacement of the fracture, the injury being admittedly severe and serious. A closed reduction of the fracture was performed which in lay language means the triple fractures were aligned and set without benefit and assistance of surgical procedure. It developed, however, that the alignment was not entirely satisfactory thereby necessitating an open reduction of the fracture on May 11, 1959. The record reveals open *608 reduction entails surgically opening the site of the fracture so that the fractures may be visually aligned. Plaintiff sustained fractures of the posterior or distal end of the posterior aspect of the tibia (the larger of the two lower leg bones), the projection or prolongation of the medial malleolus (tibia on the medial side) and lateral malleolus (fibula on the lateral side). The most severe fracture, that of the posterior tibial malleolus was aligned, set and fixed in place with two screws. The break in the medial tibial malleolus was similarly corrected with the insertion of only one screw. The fracture of the fibula required only setting and alignment. Following the aforesaid surgical procedure plaintiff's left leg was placed in a cast in which it remained for a period of several weeks. Plaintiff's left leg was kept in a cast until October 30, 1959, at which time the cast was removed and plaintiff permitted to get about on crutches. Dr. Chesney examined plaintiff November 17, 1959, at which time plaintiff was found to be progressing and improving satisfactorily. Plaintiff was then found to have good motion in the affected ankle with little tenderness in the area of the injury whereupon plaintiff was placed on minimal weight bearing. On January 19, 1960, Dr. Chesney again examined plaintiff and found plaintiff's progress so satisfactory that he recommended plaintiff resume light duty. Plaintiff was again seen by Dr. Chesney on February 23, 1960, at which time Dr. Chesney found plaintiff bearing his weight so well that he considered plaintiff cured and accordingly, discharged plaintiff on said date. On this occasion Dr. Chesney also found there was some limited restriction of motion in the ankle joint and on that basis considered plaintiff still suffered some disability but regarded said disability so slight that he would not render an estimate as to its degree. Predicated upon all X-rays taken prior to December 1, 1959, he felt that all fractures were solidly united and healed as near perfect as possible. At this time Dr. Chesney has no record or recollection of plaintiff complaining of pain. On March 31, 1960, Dr. Chesney saw and examined plaintiff for the last time. On this occasion he found that plaintiff had not yet resumed work and again suggested that plaintiff return to light duty as he considered plaintiff had attained maximum improvement. He suggested, however, that plaintiff perform only light duty for a few weeks following which he should be able to resume full employment.
Dr. Charles B. Cracraft, orthopedist, examined plaintiff on May 6, 1960. Based on examination of plaintiff, and X-rays made available to him as well as radiological examination conducted at his own request, Dr. Cracraft observed some swelling of the affected area as well as slight tenderness. He noted restriction of motion of approximately 10 degrees of dorsi flexion and 20 degrees plantar flexion with inversion and eversion of the affected ankle restricted approximately 50% as compared with the other ankle. X-rays taken pursuant to his direction revealed all of the fractures to be solidly united in satisfactory position of alignment with the exception of the medial malleolus which union he did not regard as then complete. He found the ankle mortise well preserved and apparently unaffected. He did not consider plaintiff then fully recovered but believed that with daily whirlpool baths for approximately two weeks, plaintiff could then return to light work which did not require prolonged walking or standing. At this time Dr. Cracraft considered plaintiff had an approximate 20% disability of the left leg which could be expected to improve gradually. He requested that plaintiff return for further examination and re-evaluation in three months. On August 1, 1960, Dr. Cracraft rendered plaintiff's employer a report stating that plaintiff had achieved maximum improvement and that although plaintiff still suffered a 10% disability of the left leg, plaintiff was nevertheless able to resume his former employment. Dr. Cracraft found no evidence of arthritic change, no cartilaginous injury, no articular surface damage, no disturbance of the mortise and no objective symptoms which would justify *609 plaintiff's complaints of significant pain. Moreover, his testimony shows that as of October 1, 1960, plaintiff's injury, though severe, had completely healed to the extent that he considered plaintiff able to resume common labor involving stooping, heavy lifting, carrying or pushing heavy loads or equipment, and climbing. He stated expressly that he could detect no reason why plaintiff should complain of pain in his left ankle any more than in his right. Although he felt that plaintiff had a 10% permanent disability of the left leg as a result of the injury he considered it resulted in no "functional disability" and that it would and should not disable plaintiff from performing any sort of common labor without appreciable or significant pain.
Able counsel for plaintiff attempts to show a conflict between the testimony of Drs. Chesney and Cracraft based on the fact that Dr. Chesney testified he was not in a position to state whether plaintiff was justified in complaining of pain subsequent to March 31, 1960, the last date on which plaintiff was seen by Dr. Chesney. In this regard we find no conflict whatsoever between the experts on this score. The testimony of Dr. Chesney is simply to the effect that plaintiff did not complain to him of pain as of February 23, 1960, and that there was a possibility that plaintiff might experience future trouble with the injured ankle. Dr. Chesney's testimony frankly grants that since Dr. Cracraft had seen plaintiff subsequent to March 31, 1960, the latter was in a better position to determine whether plaintiff was able to work without significant pain and also whether any arthritic changes had occurred. It appears, therefore, that learned counsel for plaintiff has misconstrued the testimony of Dr. Chesney in contending that said doctor's testimony is in conflict with that of Dr. Cracraft as regards the issue of whether or not plaintiff is able to work without significant pain. On the contrary, we view the testimony of these experts as entirely compatible as regards plaintiff's ability to resume employment at the time compensation benefits were discontinued on August 6, 1960. While it is true that Dr. Cracraft found plaintiff still disabled after plaintiff had been discharged by Dr. Chesney, the finding of Dr. Chesney that plaintiff had no ground for complaint of pain on February 23, 1960 is not inconsistent with the finding of Dr. Cracraft that plaintiff was free of pain on August 1, 1960.
It is quite true, as contended by learned counsel for defendant that in workmen's compensation cases lay testimony regarding alleged disability will not be considered where there is no material conflict in the medical evidence. Guillory v. Southern Farm Bureau Casualty Insurance Co., 237 La. 374, 111 So.2d 314; Davis v. Clyburn, La.App., 109 So.2d 126. The rule, however, addresses itself more to the weight to be accorded such lay testimony rather than to the admissibility thereof. To hold otherwise is to rule in effect that lay testimony of alleged disability may not be introduced until all medical evidence is of record which is tantamount to saying that such lay evidence may not be introduced at all until the proper foundation, consisting of a conflict in medical evidence has been established. We do not perceive such to be the rationale of the rule under consideration. Our examination of the authorities dealing with the subject matter leaves the clear impression that the rule is concerned primarily with the weight to be given such lay testimony rather than its admissibility. Any other interpretation would, in our opinion, lead to highly illogical and undesirable results as we shall attempt to demonstrate. It is most unlikely that plaintiff in presenting his evidence in chief will offer conflicting medical testimony. Ordinarily lay testimony regarding alleged disability is offered in corroboration of plaintiff's medical evidence intended to establish that plaintiff cannot work without significant pain. A ruling to the effect that plaintiff cannot offer lay testimony in regard to such an issue until a conflict in medical evidence is established has the practical effect of controlling *610 plaintiff in the order of his proof and relegating such evidence to the status of rebuttal evidence only. This is necessarily so because, in the ordinary course of events, the conflict in testimony rarely occurs until defendant has presented his medical experts upon the close of plaintiff's case in chief. While it is true that both experts who testified in the case at bar proved to be the only medical witnesses appearing herein and while it is also true that both were called on plaintiff's behalf prior to plaintiff's attempt to introduce lay testimony, plaintiff had no way of knowing whether defendant would introduce additional medical evidence. It was incumbent upon plaintiff to present his case in full upon the offering of his evidence in chief and this he did. Despite defendant's objection we believe our learned brother below properly admitted the evidence to which defendant so strenuously objects. As we view the subject matter, such lay testimony should be permitted by the trial court when offered by plaintiff in the presentation of his evidence in chief. The consideration and weight to be accorded thereto is then determined in the light of the medical evidence as a whole. If the record as a whole discloses no material difference or divergence of views among the medical experts the trial court must then, in accordance with established jurisprudence, disregard the lay testimony appearing in the record.
It follows that our learned brother below properly admitted in evidence the testimony to which able counsel for defendant so strenuously objected.
The medical evidence clearly establishes that plaintiff was able to resume his former employment as of August 1, 1960, on which date examination revealed him to be capable of performing all aspects of his occupation of common laborer without justifiable ground for complaint of significant pain. It follows that the learned trial court properly rejected plaintiff's demand for maximum benefits for total permanent disability.
Plaintiff's alternative demand for benefits pursuant to LSA-R.S. 23:1221, Section (1), which prescribes benefits for temporary total disability, is clearly without merit. It suffices to say that the record is devoid of evidence indicating plaintiff's alleged disability to be temporary. On the contrary, the record reveals that the non-functional 10% disability which plaintiff has sustained to his left leg is permanent in nature.
Plaintiff's contention that the trial court erred in rejecting his alternative demands for benefits under LSA-R.S. 23:1221 (3), pertaining to partial permanent disability and LSA-R.S. 23:1221(4) (h) (o) pertaining to partial loss of the use or function of plaintiff's left leg may be disposed of on the basis that the record fails to establish that the slight disability with which plaintiff has been left is in any way "functional" or, in other words, impairs his ability to perform his former employment to the extent that his earning capacity is impaired or reduced. See Vilce v. Travelers Ins. Co., La.App., 24 So.2d 485, and Stogner v. American Motorists Insurance Co., La. App., 123 So.2d 655.
The cited cases hold, in substance, that benefits payable under LSA-R.S. 23:1221(3) are awarded only when the injured employee has sustained partial permanent disability that is functional in nature and results in impairment or reduction of his earning capacity. In most of the cases wherein such an award is made it appears that the claimant has returned to work of a similar nature but because of residual functional disability his earning capacity is impaired or reduced.
In the case at bar the medical evidence is clearly to the effect that whereas plaintiff does have a 10% disability of his left leg, it is regarded as a non-functional disability which we understand to mean disability of such nature as will not impair or impede his ability to fully perform every aspect of his former occupation of common *611 laborer. It further appears that plaintiff has not obtained employment of a similar nature since his injury and has not attempted to do manual labor. It further appears that plaintiff's failure to obtain employment has been due more to a scarcity of work than his inability to perform common labor. Plaintiff's testimony reveals that though he has made application for work he has not been successful in obtaining employment and that he would attempt work if given the opportunity. It is not shown that plaintiff was ever denied employment because of the condition of his left ankle.
Furthermore, with respect to plaintiff's alternative demand for benefits for the partial loss of use or function of his left leg, the medical testimony is clearly to the effect that whereas plaintiff has a permanent 10% disability of that member, said disability is nonfunctional. The testimony of Dr. Cracraft establishes that he did in fact ascribe that degree of disability to the member in question solely because he felt that, because of the severity of the injury, plaintiff's left leg would "never be the same as before" although Dr. Cracraft also believed plaintiff's injury had attained as nearly perfect healing as medically possible. In short, the medical testimony is clearly to the effect that despite said minimal disability to the member in question, plaintiff's overall ability to perform all aspects of his former employment suffered no impairment, reduction or diminution whatsoever. Under such circumstances, the learned trial court properly rejected plaintiff's said demand.
Plaintiff, having failed to establish his right to compensation benefits in addition to those paid by defendant prior to institution of this suit, is clearly without right to recover either penalties or attorney's fees herein.
From the foregoing it follows that the judgment of the esteemed trial court is correct and, accordingly, affirmed.
Affirmed.