LOTTINGER, Judge.
This suit was filed by petitioner, Alva Clyde Sallinger, Jr., for maximum compensation benefits against his employer, Sachse Electric, Inc., and its workmen’s compensation insurer, Continental Insurance Company. The Lower Court rendered judgment in favor of petitioner for 78 weeks for temporary total disability, less compensation paid by defendants, plus an award of 15'% for permanent partial disability to his left leg. Petitioner took this appeal, and the defendant has answered the appeal seeking a reduction in the amount awarded.
The accident, which forms the basis of this litigation, occurred on June 30, 1966, at which time petitioner was 20 years of age and was employed as a third-year apprentice electrician to Sachse Electric, Inc. Petitioner had been a student at Southeastern Louisiana College during the period September, 1963 through May, 1966. He had been employed by other electrical contractors during previous summers which resulted in his third year as apprentice electrician.
The petitioner received rather extensive injuries as a result of a fall from a scaffold in the course of his employment. Workmen’s compensation was paid him at the rate of $35 per week commencing with the date of the accident. Following the accident, he returned to employment as a draftsman with the Honeywell Corporation. Compensation was then terminated on November 16, 1966. He continued to work as a draftsman until June 14, 1967, when further surgery was required. Com *161 pensation was resumed by defendant appellants on June 14, 1967, and continued until October 24, 1967, when it was again terminated. He was discharged by his doctor as able to return to his regular work on January 2, 1968. Following trial of the matter, at which petitioner himself was the only witness who testified, the Lower Court awarded judgment in favor of petitioner for disability payments at $35 per week for the 78-week period from June 30, 1966, the date of the accident, until January 2, 1968, the date of his discharge, or a total of $2,730.-00, subject to a credit of $1,400.00 for payments previously made. Under the provisions of R.S. 23:1221(4) (h) (o), the Court further awarded judgment for petitioner for his 15% partial disability to his leg at the rate of 150 weeks times 15% times $35.00 per week, or a total of $787.-50. From this award, the petitioner has appealed and the defendant has answered the appeal.
The only medical evidence in the record consists of seven reports of Dr. Moss M. Bannerman, a specialist in orthopedics which was introduced by stipulation of counsel for petitioner and defendant.
In his initial report dated February 1, 1967, Dr. Bannerman listed the injuries as (1) a fracture of the left wrist, (2) a severe fracture of the left foot os calcis, (3) a fracture of the right foot, second and third metatarsals, and (4) multiple contusions and lacerations. In commenting on the injuries, the report states that a “ * * * good result has been obtained on all the fractures listed above with the exception of the os calcis. Because of the continued complaints referable to this area, further surgery in the form of a subastrag-alar fusion, may be necessary.”
In his second report of April 3, 1967, Dr. Bannerman stated that petitioner continues to have pain to the subastragalar joint, and that he has recommended fusion which should be carried out in the not too distant future.
The next report of June 16, 1967, advises that the “ * * * patient was hospitalized and a subastragalar fusion carried out at the Baton Rouge General Hospital on June the 14, 1967. His progress since operation has been satisfactory. He should be discharged in the next several days. He will be in a cast for about two and a half months during which time he may possibly be able to go back to light work if that is available. Approximately four months is indicated prior to discharge following the last operation.”
In his report of October 9, 1967, Dr. Bannerman reported very satisfactory progress. He stated that the cast was removed about two months after the operation and since that time petitioner has been working regularly. Although there was still some soreness and slight swelling in the right foot, X-rays of September 9th showed good callus formation and fusion across the site of injury and operation.
On January 2, 1968, Dr. Bannerman reported continued satisfactory progress and discharged petitioner for “electrical work”.
In his final report of April 16, 1968, Dr. Bannerman noted continued “quite satisfactory” progress. Although there was an excellent range of motion in the ankle, it was thought that there was about a 15'% disability of the use of the left leg as a result of the subastragalar fusion but “ * * this is not disabling of any type of work which he might do now or in the future”.
It is the contention of petitioner that he should be awarded total and permanent disability as a result of his injuries based upon his testimony to the effect that he was unable to return to his prior occupation as third-year apprentice electrician. His testimony in this regard, however, is entirely refuted by the medical evidence in *162 troduced in the form of the reports of Dr. Bannerman.
The jurisprudence of this state is quite clear to the effect that the petitioner, in a workmen’s compensation case, must establish his claim to a legal certainty and by a reasonable preponderance of the evidence, speculation, conjecture, possibility or unsupported probability will not suffice. Russell v. Employers Mutual Liability Ins. Co. of Wisconsin, 246 La. 1012, 169 So.2d 82.
Furthermore, where there is no conflict in the medical testimony, contrary lay testimony is disregarded. Guillory v. Southern Farm Bureau Cas. Ins. Co., 237 La. 374, 111 So.2d 314.
It is, therefore, clear that the total disability benefits to which petitioner was entitled, ceased as of January 2, 1968, when he was fully discharged by Dr. Bannerman to return to his previous employment, and the Lower Court was correct in so holding.
In its answer to the appeal, the defendant alleges error on the part of the Lower Court in awarding petitioner compensation for both temporary total disability and partial permanent disability. This contention on the part of defendant is correct if the 15% disability to the left leg of petitioner was a non-functional disability.
In Lee v. Royal Indemnity Company, 149 So.2d 606 (La.App. 1st Cir. 1963), cert. denied, 244 La. 209, 151 So.2d 689 (1963), we were faced by a contention on the part of the petitioner that the Trial Court erred in rejecting his alternative demand for payments under LSA-R.S. 23:1221(3), pertaining to partial permanent disability and LSA-R.S. 23:1221(4) (h) (o) pertaining to partial loss of the use or function of plaintiff’s left leg. In that case we said:
“ * * * the record fails to establish that the slight disability with which plaintiff has been left is in any way ‘functional’ or, in any other words, impairs his ability to perform his former employment to the extent that his earning capacity is impaired or reduced.
See Vilce v. Travelers Ins. Co., La.App., 24 So.2d 485, and Stogner v. American Motorists Insurance Co., La.App., 123 So.2d 655.
The cited cases hold, in substance, that benefits payable under LSA-R.S. 23:1221(3) are awarded only when the injured employee has sustained partial permanent disability that is functional in nature and results in impairment or reduction of his earning capacity. In most of the cases wherein such an award is made it appears that the claimant has returned to work of a similar nature but because if residual functional disability his earning capacity is impaired or reduced.
In the case at bar the medical evidence is clearly to the effect that whereas plaintiff does have a 10% disability of his left leg, it is regarded as a non-functional disability which we understand to mean disability of such nature as will not impair or impede his ability to fully perform every aspect of his former occupation of common laborer. It further appears that plaintiff has not obtained employment of a similar nature since his injury and has not attempted to do manual labor. It further appears that plaintiff’s failure to obtain employment has been due more to a scarcity of work than to his inability to perform common labor. Plaintiff’s testimony reveals that though he has made an application for work he has not been successful in obtaining employment and that he would attempt work if given the opportunity. It is not shown that plaintiff was ever denied employment because of the condition of his left ankle.”
Later, in Brewer v. Travelers Insurance Company, 244 So.2d 909 (La.App. 1st Cir., *163 1971), writs refused 258 La. 575, 247 So.2d 394, we followed our decision in Lee v. Royal Indemnity Co., supra saying:
“We do not find that the plaintiff-appellant has sufficiently proven that his injury causes him great pain and suffering, nor proven that this injury will impair or impede his ability to fully perform every aspect of his former occupation.”
We feel that the petitioner has failed to prove with a legal certainty that the 15% disability to his left leg was a functional one. On the contrary, the report of Dr. Bannerman was to the effect that the 15% disability of the use of the left leg was not disabling in the petitioner’s occupation as an electrician. Such being the case, the disability would be considered a non-functional one and would be controlled by the doctrine as set forth in Lee v. Royal Indemnity Co., supra and Brewer v. Travelers Insurance Company, supra.
Although the brief of defendant claims that there is no evidence in the records as to his weekly wages at the time of the accident and petitioner would, therefore, be only entitled to the minimum compensation of $10 per week, the record does disclose that the pre-trial order of May 25, 1970, established the fact that petitioner’s compensation rate was $35 per week.
For the reasons hereinabove assigned, the judgment of the Lower Court will be amended so as to only provide workmen’s compensation payments for petitioner for 78 weeks for temporary total disability, from June 30, 1966, to January 2, 1968, at the rate of $35.00 per week, less compensation paid in the amount of $1400.00, leaving a balance due to petitioner of $1330.00, with legal interest thereon from date of judicial demand and until paid. All costs of this appeal shall be paid by petitioner, as so amended the judgment of the Lower Court will be affirmed.
Judgment amended and affirmed.