STOULIG, Judge.
This appeal is from a judgment of total and permanent disability in a workmen’s compensation suit. Appellants, Dixieland Tours, Inc., and its insurer, the Commercial Union Ins. Co. of New York, challenge the trial court’s award of benefits in the sum of $35 per week for a period not to exceed 400 weeks. Harry S. Hutchinson, the plaintiff-appellee, has answered the appeal renewing his denied request for statutory penalties and attorney’s fees.
The pertinent facts are that Hutchinson, a sightseeing guide, suffered a heart attack (myocardial infarction) when he ran up the steps at the State Capital in Baton Rouge while conducting a tour for Dixieland Tours, Inc. From the day following the attack, plaintiff was totally immobilized for a period of five months. His treating physician gradually allowed Hutchinson to participate in progressively *911 increased activities to the point of now near normality. However, the plaintiff contends he is totally disabled from returning to his former occupation because of recurring attacks of angina pectoris and shortness of breath.
At the trial defendants disputed the occurrence of the attack within the course and scope of Hutchinson’s part-time employment for Dixieland Tours, questioning whether the plaintiff had the attack while on the job and whether he was about the work of Dixieland Tours or on an independent business trip of his own at the time it occurred. While still doubting the validity of plaintiff’s claim, on appeal defendants admit their inability to demonstrate manifest error in the trial court’s evaluation of the testimony.
Considering the evidence adduced by deposition and trial testimony, we agree with appellants that there was a legitimate factual dispute as to whether the plaintiff’s heart attack was job-related and sustained while in the employ of Dixieland Tours. Therefore the defendant insurance company was justified in resisting Mr. Hutchinson’s compensation demand and, accordingly, we find no error in the trial court’s rejection of plaintiff’s request for penalties and attorney’s fees.
The questions forming the thrust of this appeal were accurately framed by counsel for appellant as follows: “Does the proof adduced before the trial judge establish a present disability in the plaintiff to do the same work he was doing at the time of his accident [heart attack], and, if so, is this present disability the result of that incident?”
The controlling jurisprudence on these issues was expressed in the rehearing opinion of the Supreme Court in the case of Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969). There the Supreme Court was faced with a medically established clear case of disability, described on page 827 as follows:
“ * * * What has happened to the plaintiff, according to all of the medical testimony, is that his total physical being and capacity have so changed that because of the symptoms exhibited (tachycardia or angina pectoris) and the preexisting disease (defective atrioventricular node or coronary sclerosis) he cannot return to work of a character similar to that which he had successfully done without pain, complaint, or disability for 16 years before the first episode and for nine months after it. All would agree that it is likely that the symptoms (angina pectoris or tachycardia) will recur, producing in themselves pain, blackouts, and collapses. Under both diagnoses a ‘full blown coronary’ or fatal occlusion is likely to result from the extreme exertion required by his work.”
Then, on the above factual basis, the Supreme Court stated what is now apparently the rule for determining disability:
“In a case such as the present one, where there is proof of an accident and of a following disability without any intervening cause, it is presumed that the accident caused the disability. The criterion for causal connection between the accident and the disability is: Has the accident changed the plaintiff’s condition so as to render him disabled and unfit for his former employment?” 221 So. 2d at 827.
In attempting to apply the above rule, we observe the factual distinction that the instant matter involves less conclusive medical testimony in that there is no clear showing of a total physical disability or that, as in Bertrand, “a ‘full blown coronary’ or fatal occlusion is likely to result from the extreme exertion required by his [plaintiff’s] work.”
Clarifying the above-quoted guideline, the Supreme Court in Bertrand elaborated on its rule on page 828 as follows:
“ * * * The legal criterion in compensation cases involving heart disease *912 should be whether the accident caused a change in the employee’s physical condition which is disabling, and not whether the accident changed the diseased organ of the employee. The residual condition from an accidental injury which substantially increases the possibility of recurrence of a disabling or death-dealing episode is legally disabling and is compensa-ble under our Workmen’s Compensation law.”
In the record before us there is no medical testimony of substantially increased likelihood of a “recurrence of a disabling or death-dealing episode.”
Dr. Lloyd Lo Cascio, a general practitioner who was plaintiff’s treating physician, first saw him the day after the heart attack on March 28, 1968. He treated Mr. Hutchinson until November 25, 1969. From his letter describing plaintiff’s condition to the defendants’ counsel, Dr. Lo Cascio read into the record the following:
“ * * * The last electrocardiogram was taken on November 12th, 1969 was static, showing evidence of the old posterior infarction. Mr. Hutchinson was seen last on November 25th, 1969 with no cardial complaints, his prognosis was good but has been advised not to go back to work to heavy strenuous types of work.”
Dr. Lo Cascio neither specifically stated plaintiff was disabled nor defined his phrase “heavy strenuous types of work.” However, in reference to the doctor’s statement that the plaintiff was last seen on November 25, 1969, with “no cardial complaints,” this testimony was elicited:
“Q So I think we can infer as of the time of your comments in your letter he had no myocardial complaints meaning he was not having these things that Mr. Reese detailed to you, shortness of breath and pain in the chest, isn’t that correct?
A Yes.
Q Would you look back through your notes and see when was the last time you got such a complaint ?
A In May of 1969 [more than two years prior to trial]. * * * ”
Dr. Ted Bloch, a specialist in internal medicine, examined Mr. Hutchinson for the defendants on October 8, 1971, shortly before trial. His examination revealed that the plaintiff’s blood pressure and heart size were within normal limits. When asked if he reached any conclusions based upon the patient’s history and his examination, Dr. Bloch testified as follows:
“A * * * j (jjd n0f feej Mr. Hutchinson at this time was disabled from performing work as a driver of a tour limousine. Perhaps I should elaborate on this. It is true he has to be told by his physi- . cians not to over exert himself and not engage in stress, full activity, on the other hand in talking with him and in observing what other patients do it did not seem to me that driving a limousine or giving a tour would constitute unusual or heavy work. And these are basic criteria that I would use in answering a question such as posed to me. In addition one has to consider on the basis of physical examination whether an individual who has had a myocardial infarction has any evidence of congestive failure, which Mr. Hutchinson did not show, you know, one has to ascertain from history whether one is having a great deal of angina or whether one’s daily activities are affected on all of these factors, it seems to be answered in the negative insofar as I was concerned. So in response to your question I submitted a letter to you which you have, indicating that I did not feel that Mr. Hutchinson was disabled.
*913 Q As a matter of fact, Doctor, he told you that he was working part-time as a driver of tour limousines at the present time ?
A That is correct.
Q Now, Doctor, would you feel that based on what you were told and based on your examination and lab studies on Mr. Hutchinson that he would be prohibited from climbing stairs, say to the top of the courtroom clock here ?
A Again, we have to ascertain what Mr. Hutchinson does during his daily life, what his activities are, we do not interdict patients who have recovered, certainly after this period of time of climbing stairs, we do not indicate that he should be up at a gallop, perhaps to be more responsive to your question he would not be interdicted from climbing stairs. He would be interdicted from running upstairs * * *.” (Emphasis ours.)
The last physician to testify was Dr. Isa-dore Yager, also a specialist in internal medicine. While treating the plaintiff for other medical problems, including a stomach and ulcer condition, Dr. Yager caused an electrocardiogram to be made. A reading of the tape by Dr. Quroros, a cardiologist, revealed no abnormal mass, and that the patient had good tone and normal rhythm without any murmurs. Nevertheless, Dr. Yager stated that Mr. Hutchinson was still complaining of shortness of breath with any prolonged activity.
When asked a hypothetical question about plaintiff’s future activity Dr. Yager responded as follows:
“ * * * What would happen if he would walk up a flight of stairs are [sic] really conjecture, it is very difficult to honestly say this, this would be guessing, I would say from his past history or present age group, from the emotional personality type Mr. Hutchinson is, his chances or possibility of having a recurrence is possible because he is a very tense individual and he feels things rather strongly. But I don’t think I can give you a yes or no type answer to that type of question.”
Dr. Yager went on to explain that Mr. Hutchinson’s shortness of breath is a “subjective finding” which, while possibly related to heart disease, “ * * * could also be related to anxiety state, anxiety state also can be due to his problems with his stomach * * Finally, Dr. Yager acknowledged that relative to plaintiff’s shortness of breath, “It would be difficult again with his personality type, with his ulcer condition and cardiac condition to put it on any one of the three.”
The only testimony elicited from Dr. Ya-ger in support of plaintiff’s alleged disability was his statement, “I would probably recommend that he do a different line of work.” The doctor indicated that this was based primarily on plaintiff’s psychic condition of fear of another heart attack and admitted freely that his statement was conj ecture: “ * * * I would flip a coin, it’s hard to say really.”
In summary, of the three examining physicians, Dr. Lo Cascio did not express an opinion as to plaintiff’s inability to work as a sightseeing guide; Dr. Bloch did not believe the plaintiff was disabled; and Dr. Yager rendered what is at best an equivocal opinion of disability. Adding to this the fact that the record reveals in several places that Mr. Hutchinson in fact has been pursuing his former work at least on a part-time basis, we find that the trial court’s conclusion that the plaintiff is totally disabled is unsupported by the evidence. However a finding of partial disability is warranted.
It must be noted that Mr. Hutchinson’s trade consists of three activities: commissioned sales of tours, actual conducting of tours, and special occasion limousine driving. While his efficiency as a tour guide *914 may now be somewhat impaired because of his inability to climb steps at a quick pace, still he is not totally disabled from performing the significant functions of this activity. In fact the record discloses that since his accident Mr. Hutchinson has engaged in the conducting of tours as a lecturer and on several occasions has driven a limousine. Thus, we find him to be only partially disabled.
The Louisiana Workmen’s Compensation Statute provides payments for partial disability under LSA-R.S. 23:1221(3) as follows:
“For injury producing partial disability to do work of any reasonable character, sixty-five per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not beyond three hundred weeks.”
In construing the legal significance of this section of the compensation statute in the case of Lee v. Royal Indemnity Company, 149 So.2d 606, 610 (La.App. 1st Cir. 1963; certiorari refused, 244 La. 209, 151 So.2d 689 [1963]), the court stated:
“ * * * [Bjenefits payable under LSA-R.S. 23:1221(3) are awarded only when the injured employee has sustained partial permanent disability that is functional in nature and results in impairment or reduction of his earning capacity. In most of the cases wherein such an award is made it appears that the claimant has returned to work of a similar nature but because of residual functional disability his earning capacity is impaired or reduced.”
Later jurisprudence has consistently cited and applied the above criterion: Sallinger v. Sachse Electric Co., 255 So.2d 159 (La. App. 1st Cir. 1971) ; Brewer v. Travelers Insurance Company, 244 So.2d 909 (La. App. 1st Cir. 1971); and Ventress v. Danel-Ryder, Inc., 225 So.2d 765 (La.App. 3d Cir. 1969).
In analyzing all of the pertinent evidence bearing upon his earnings, particularly Mr. Hutchinson’s tax returns for the years 1967 through 1970, in an effort to determine the plaintiff’s income before and after the accident to which we would apply the compensation formula above, we observe that nowhere is it clearly indicated what part of his income resulted exclusively from plaintiff’s service as a sightseeing guide either with Dixieland Tours or in his own business. As mentioned previously, Mr. Hutchinson functions as a commissioned tour sales agent and a special occasion limousine driver, as well as a tour guide. He acts in these capacities both as a part-time employee of Dixieland Tours and as the operator of his own private business. Neither plaintiff’s W-2 forms from Dixieland nor the Schedule C from his own business designates what part of this income applies to each activity. The president of Dixieland Tours indicated that plaintiff’s paychecks likewise do not separate his earnings. Thus, since we have found Mr. Hutchinson only partially disabled as a tour guide, it is impossible for this court to accurately determine the wages upon which to ground a specific award.
We observe in passing that while plaintiff’s wages from Dixieland declined from $3,983.57 in 1967, the year preceding the accident, to $927 in 1968, the year of the accident, his gross receipts from his private business increased from $100 (net loss of $1,229.65) in 1967, to $9,996.28 (net profit of $2,124.84) in 1968. Obviously this result obtained from plaintiff’s greater attention to his own affairs rather than to those of Dixieland Tours during this period. This fact reinforces our finding of only partial disability.
For the reasons above assigned, the judgment is amended to award workmen’s compensation for partial disability for a period not to exceed 300 weeks and in all other respects the judgment is affirmed. The case is remanded for the trial court to ascertain plaintiff’s income as a tour guide *915 before the accident and thereafter during the disability. Costs of this appeal are to be borne by appellant. ^
Amended in part; affirmed in part; and remanded.